**Julia Anne McGHEE, Appellee,**

v.

**Kenneth Smiley MILLER, et al., Appellants.**

Supreme Court of Tennessee, at Knoxville.

June 27, 1988.

Joseph G. Coker, Campbell Co. Atty., Jacksboro, for appellants.

David H. Dunaway, Dunaway, Dunaway & Van Hook, LaFollette, for appellee.

Robert B. Mitchell, Durant, Sabanosh, Nichols & Houston, Bridgeport, Conn., amicus curiae.

OPINION

COOPER, Justice.

This is an appeal from the judgment of the Chancery Court of Campbell County ordering appellants to reinstate appellee to her "teaching position at the Campbell County Comprehensive High School with all perquisites and benefits," and awarding appellee described monetary benefits. Appellants insist that the evidence preponderates against the finding of the chancellor that appellee had been wrongfully terminated from her teaching position. We concur in the chancellor's finding and affirm the judgment entered in the trial court.

Appellee is a tenured teacher in the Campbell County School System, teaching English at the Campbell County Comprehensive High School. During the 1986–87 School year, one of her students was John Garner, a star basketball player. Mr. Garner found it difficult to attend the first period English class taught by Mrs. McGhee. Since only five unexcused absences were allowable under the administrative guidelines,[1] Mrs. McGhee reported

---

1. The rules under which teachers at the high school were required to operate specify that a

the absences to the high school principal, Mr. Clifford Douglas. Mr. Douglas then talked with Mr. Garner's parents at a basketball game and set up a meeting between them and Mrs. McGhee. When the parents of Mr. Garner were unable to attend the meeting, Mr. Douglas suggested that Mrs. McGhee assign makeup work to Garner. This was done. However, Mr. Garner did not do the makeup work, nor did he discontinue his habit of "skipping" his first period class.

On January 12, 1987, following the rules, Mrs. McGhee gave Garner a grade of "F" on the "computer sheet." The posting of the grade was known to school personnel and through them became known to the community.

As noted by the chancellor, "when a considerable hue and cry arose over the fact that Garner had failed English, certain elements in Campbell County threatened and intimidated the plaintiff because she had, allegedly, ruined their basketball team, since Garner became academically ineligible to play, and games already played were in danger of being forfeited because of his ineligible participation."

Some athletic department personnel made veiled threats against Mrs. McGhee. The basketball coach prepared a petition, which was passed around the school by his daughter, calling for the dismissal of Mrs. McGhee as a teacher.

On January 18, 1987, the high school principal contacted appellee's father and asked him to talk with her "to fix Garner's grades." He also indicated that if Mrs. McGhee would fix the grade, he would give her a good evaluation on the teacher career ladder program.

The next school day, the principal brought Garner's permanent grade card to appellee's classroom, and asked her to change Garner's English grade, which had previously been entered in the computer as an "F". Plaintiff took the record, left her classroom, and entered Garner's grade as D–Minus. She also resigned immediately. (The resignation was withdrawn before the

school board could act on it.) Within minutes, Mrs. McGhee reported to the school office that she was too emotionally upset to complete her teaching assignments for the day, and asked that her classroom be covered for the last two periods of the day. Mr. Douglas, taught one of the two periods, and the assistant principal, the other.

Mrs. McGhee reported by telephone the next two days, and asked that a substitute teacher be called for her. The next six school days were snow days and it was not necessary that Mrs. McGhee teach or get a substitute in her place.

In early February, 1987, Mrs. McGhee sought treatment by Dr. Mark Beale, a psychiatrist, for stress and depression brought on by the above events. Dr. Beale expressed the opinion that at the time he first saw Mrs. McGhee she was unable to perform her duties as a teacher.

On February 3, 1987, the Superintendent of Schools, Kenneth Smiley Miller, went to Mrs. McGhee's home to ask her to come back to work. Mr. Miller knew at the time that Mrs. McGhee was under the care of Dr. Beale.

On February 4, 1987, Mr. Miller sent Mrs. McGhee a letter instructing her to return to work by Friday, February 6, 1987, or face administrative suspension.

On February 6, 1987, Mr. Miller advised Mrs. McGhee by letter that she had been suspended. It was also on this date, that the petition circulated in the high school was published, and someone fired a bullet through the windshield of Mrs. McGhee's automobile as she returned to Campbell County from Dr. Beale's office.

Thereafter, buttons were sold on school property and at school ballgames, at which members of the Board of Education were in attendance, commemorating the shooting. One type button said "I didn't shoot Ann McGhee, I tried but missed." Another "had a head on them with a slashmark through them that said no love lost for Ann McGhee."

On February 12, 1987, Mr. Miller presented charges against Mrs. McGhee to

student who has more than five (5) unexcused absences is to be given a grade of "F".

the Board of Education. A hearing was held on April 8, 1987, after which the School Board found Mrs. McGhee guilty of abandonment of her position, refusal to return to work, insubordination, and dereliction of duties. The Board of Education discharged Mrs. McGhee on the basis of its findings.

■ The chancellor found no satisfactory evidence to support the findings of the school board. The predicate of the charge of abandonment of position consisted of the events that transpired on the morning that Principal Douglas asked the plaintiff to enter a grade for John Garner different from the one entered on the computer sheet, and the days thereafter. As heretofore noted, Mrs. McGhee did what she was requested to do, resigned and left the school; but before doing so, she arranged for a substitute teacher for the day following and the next day. The next six days, school was closed on account of snow. Shortly thereafter, plaintiff submitted medical information to the superintendent's or principal's office that she was unable to teach owing to her mental and emotional condition engendered by events that occurred after she entered Mr. Garner's failing grade. Based on these circumstances, the court found, and we agree, that the plaintiff did not abandon her position.

Because she was emotionally unstable, she did not and according to the evidence, could not, return to work. While the defendants insist there is no evidence that the school or system officials threatened or intimidated the plaintiff, the fact remains that they passively, to an extent, joined in the public upbraiding of her. Permitting the sale of the scurillous badges, on school property, is one example.

■ The charge of insubordination and refusal to return to work were predicated upon the failure of Mrs. McGhee to return to work when directed to do so by Superintendent Miller. Her failure to return to work as instructed can not be classified as insubordination. The evidence shows without contradiction that she was unable to work due to stress, fear, and intimidation, which was not reduced one whit by the statement of the Superintendent that he could not guarantee her safety.

Appellants insist that the Court should disregard the testimony of Dr. Mark Beale, as he brought no records to court to substantiate his testimony. We would point out that Dr. Beale's records were not subpoened by appellants. Furthermore, we know of no authority for excluding testimony based on the personal knowledge of a medical specialist.

As to the remaining charge, dereliction of duty, the chancellor found no evidence to support this charge and neither do we.

Having found no satisfactory evidence in the record to support any of the several charges of misconduct brought against Mrs. McGhee, as detailed above, we concur in the holding of the chancellor that Mrs. McGhee was wrongfully discharged from her teaching position and that she should be reinstated without the loss of any salary or perquisites of office.

The judgment of the trial court is affirmed. Appellee's motion for damages for frivolous appeal is denied. The case is remanded for determination of additional damages, including loss of salary and other employment benefits, that may be due appellee because of the wrongful termination of her employment as a tenured teacher in the Campbell County School System. Costs of the appeal will be paid by appellants and their sureties.

Appellants have filed a motion for the consideration of post judgment facts. Accompanying the motion are (1) the pleadings and judgment in a workers' compensation action filed by appellee and heard after judgment was entered in this case and (2) an order entered in satisfaction of the judgment. Appellants ask that we consider the facts set forth in the pleadings and order and allow them a set-off of the payment made by the insurer in the worker's compensation case against the money judgment awarded plaintiff in this case. The motion is denied. The facts appellants seek to have this court consider are not capable of ready demonstration. Furthermore, if any offset were appropriate, it should have

been sought in the workers' compensation case, not this case.

Judgment affirmed.  Case remanded.

HARBISON, C.J., and FONES, DROWOTA and O'BRIEN, JJ., concur.