Roland L. FRYE, Plaintiff–Appellant,

v.

MEMPHIS STATE UNIVERSITY, et al.,
Defendants–Appellees.

Supreme Court of Tennessee,
at Jackson.

Feb. 19, 1991.
Rehearing Denied April 1, 1991.

Dan M. Norwood, Frank Deslauriers, Memphis, for plaintiff-appellant.

Charles W. Burson, Atty. Gen. & Reporter, Linda D. Walton, Asst. Atty. Gen., Nashville, for defendants-appellees.

## OPINION

DROWOTA, Justice.

This appeal has been initiated by Roland L. Frye, Plaintiff–Appellant, a tenured faculty professor at Memphis State University, Defendant–Appellee, based upon a Shelby County Chancery Court decree assessing damages for his wrongful termination by the Defendant. The dispositive issue before the Court is whether the Chancellor erred in limiting the Plaintiff's damages to one year after the wrongful termination on the basis that the Plaintiff failed to seek comparable employment between the time of the wrongful discharge and the time of reinstatement as a tenured psychology pro-

fessor at Memphis State University. For the reasons that follow, we reverse and remand.

The Plaintiff, a professor of industrial organization psychology, began teaching at Memphis State University in 1966. In addition to teaching, he is a partner in a consulting firm located in Memphis. In 1979, the Plaintiff was terminated as a tenured professor of psychology because of alleged misuse of computer privileges and facilities at Memphis State University. Subsequent to the termination, the Defendant reported the firing to the ethics committee of the American Psychological Association, the Plaintiff's professional licensing association. Additionally, the Defendant notified the public by issuing a press release that stated:

"We have been notified that the Board of Regents of the State University and Community College System of Tennessee has denied the appeal of Dr. Roland Frye and that his termination by Memphis State University has been upheld. The action took place Friday at the board meeting in Chattanooga.

Dr. Frye was terminated on September 25, 1979 as a result of charges that he conducted work using University owned computers for a commercial enterprise associated with Frye–Joure and Associates, industrial psychology consulting firm.

Dr. Frye was a professor in psychology, having joined this faculty in 1966 after teaching at Louisiana State University.

The period during which the violations of Board and University policy occurred was during 1976 and 1977. The charge stated 'that in connection with work being performed by Frye–Joure and Associates for (a client) under a commercial contract entered into during late 1976, Frye–Joure and Associates had made improper and fraudulent use of the University computer, including requiring or allowing certain graduate students of the Psychology Department then employed by Frye–Joure to perform improper computer runs on the University computer.'

Following Board and University policy, an administrative hearing was conducted with Dr. Frye, and he was given the opportunity to resign. This alternative was not accepted, and a seven member faculty committee unanimously recommended Dr. Frye's termination, following extensive hearings on the matter. Dr. Frye appealed this action to the President of the University, Dr. Billy M. Jones. President Jones upheld the decision of the committee and denied the appeal. Following established procedures, Dr. Frye then appealed to the Board of Regents. The personnel committee of the Board of Regents reviewed the appeal and recommended to the Board that the termination be upheld. The Board accepted that ruling today."

The circumstances of the firing received extensive coverage in the media in and around the Memphis area. Having received the press release, the ethics committee of the American Psychological Association even began to investigate the Plaintiff's partner in the consulting business as allegedly taking part in the illegal use of the computers. The situation involving the Plaintiff was still being closely monitored by the American Psychological Association six years subsequent to the termination. Several witnesses testified that the Plaintiff's reputation within his profession had been severely damaged.

This matter has received the attention of this Court on a previous occasion. In *Frye v. Memphis State University*, 671 S.W.2d 467 (Tenn.1984), we reversed on procedural grounds the Chancellor's decision to uphold the termination by the administrative body. On remand, the proceedings were bifurcated by agreement of the parties so that the merits of the purported wrongful termination could be considered separate and apart from the issue of damages. After hearing additional witnesses and conducting a *de novo* review of the record and exhibits presented to the administrative body, the Chancellor concluded that the discharge of the Plaintiff was not sup-

ported by clear or convincing evidence in violation of T.C.A. § 49–8–303(a)(4).[1]

The Chancellor ordered that the Plaintiff be reinstated as a tenured professor in the Department of Psychology at Memphis State University and referred the question of damages to a Master. The parties stipulated that the Plaintiff would be reinstated effective August 21, 1988, and that all back pay and benefits would cease to accrue on that date. The parties also stipulated that damages would begin to commence on September 25, 1979, and set specific damage amounts which would be due if the Master found that the Plaintiff was entitled to receive damages for lost salary, longevity pay, athletic event discounts, insurance premium costs, pension benefits, prejudgment interest, and costs.

After two days of hearings in June, 1989, the Master concluded that the Plaintiff was entitled to recover the sum of $429,258.00, representing all university income losses, plus insurance costs, prejudgment interest and costs.[2] The figures used by the Master to calculate the total judgment were those stipulated to by the parties. The Defendant objected to the Master's report, contending that the Master erroneously found that the Plaintiff's failure to seek employment during the seven years between his termination and the time that the hearing was held, did not constitute a lack of reasonable diligence with respect to mitigating damages. The Chancellor agreed, and entered an order in November, 1989, which provided in part:

"1. Plaintiff had a duty to exercise reasonable diligence in seeking employment following the termination of his employment with Memphis State University.
2. Plaintiff at no time sought new employment following his discharge from Memphis State University. Plaintiff, therefore, did not exercise reasonable diligence in seeking employment.
3. Seven years elapsed between the termination of Plaintiff's employment and the hearing on damages before the Master. The maximum period of time during which it was reasonable for Plaintiff to make no effort to seek employment was one year."

■ The Chancellor modified the award to $39,515.00, representing back pay and longevity pay for academic year 1979 through 1980, plus insurance benefits and interest. The report of the Master was essentially adopted by the Chancellor with the exception of limiting damages to one year after the Plaintiff was wrongfully terminated. Accordingly, this Court is now called upon to decide whether the Plaintiff failed to exercise reasonable diligence in mitigating damages by not seeking comparable employment subsequent to his termination in 1979.

The Defendant contends that since the Plaintiff did not seek employment subsequent to being terminated, he failed to mitigate damages. Specifically, the Defendant argues that the Plaintiff's reliance upon his belief that it would be futile for him to

1. T.C.A. § 49–8–303(a)(4) provides that "[t]he burden of proof that adequate cause for termination exists shall be ... satisfied only by clear and convincing evidence in the record considered as a whole." Adequate cause is defined in T.C.A. § 49–8–302 which provides:

> "Adequate cause for termination of faculty with tenure includes the following:
> (1) Incompetence or dishonesty in teaching or research;
> (2) Willful failure to perform the duties and responsibilities for which the faculty member was employed, or refusal or continued failure to comply with the policies of the board, institution or department, or to carry out specific assignments, when such policies or assignments are reasonable and nondiscriminatory;
> (3) Conviction of a felony or crime involving moral turpitude;

> (4) Improper use of narcotics or intoxicants which substantially impairs the faculty member's fulfillment of his department and institutional duties and responsibilities;
> (5) Capricious disregard of accepted standards of professional conduct;
> (6) Falsification of information on an employment application or other information concerning qualifications for a position; and
> (7) Failure to maintain the level of professional excellence and ability demonstrated by other members of the faculty in the department or division of the institution."

2. The breakdown of the award is $318,062.00 representing the total salary that the Plaintiff would have received since the time he was wrongfully terminated; $27,476.00 for insurance costs; and $83,720.00 in interest.

attempt to locate employment, constitutes a failure to exercise reasonable diligence. The Defendant does not dispute that in wrongful termination litigation, the employer has the burden of proving that the employee failed to mitigate damages. Rather, according to the Defendant, the Plaintiff simply failed to search for alternative work which automatically amounted to a failure to exercise reasonable diligence consistent with mitigation principles. The Plaintiff concedes that he did not seek employment after being terminated. The purported justification for not doing so rests upon a belief that his professional reputation was sufficiently damaged that applying with other colleges or universities would simply amount to a futile act. The Defendant responds by arguing that the Plaintiff's subjective perception as to the futility of a job search does not excuse the complete failure to attempt to mitigate damages by making a reasonable and diligent attempt to locate employment, particularly given the fact that several positions similar to the Plaintiff's were advertised in the *Chronicle of Higher Education* subsequent to the termination.

When an employee has been wrongfully terminated, the measure of damages is the amount the employee would have earned had the employer not dismissed him, less what would have been earned, or might have been earned, in some other employment, by the exercise of reasonable diligence. *State ex rel. Chapdelaine v. Torrence*, 532 S.W.2d 542, 550 (Tenn.1975); *Godson v. Macfadden*, 162 Tenn. 528, 39 S.W.2d 287, 288 (1931). While the employee may recover the loss of wages, there is a duty to minimize this loss by seeking other employment. *Polk v. Torrence*, 218 Tenn. 680, 405 S.W.2d 575, 577 (1966); *Wise v. City of Knoxville*, 194 Tenn. 90, 250 S.W.2d 29, 30 (1952). The employee is not required to accept any offer of employment, or abandon his home or place of residence to seek other employment, but is only required to exercise reasonable diligence in seeking other employ-

ment of a similar or comparable nature. *News Publishing Co. v. Burger*, 2 Tenn.Ct. Civ.App. 179, 190 (1911). "An employee is not required to go to heroic lengths in attempting to mitigate his damages, but only to take reasonable steps to do so." *Ford v. Nicks*, 866 F.2d 865, 873 (6th Cir. 1989). The burden is on the employer to establish that the employee failed to exercise reasonable diligence in mitigating damages. *Chapdelaine*, 532 S.W.2d at 550. The employee is not required to mitigate damages by accepting a position that is not comparable or is, in effect, a demotion. *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982) ("[mitigation] requires the claimant to use reasonable diligence in finding other suitable employment. Although the [employee] need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits ·his right to backpay if he refuses a job substantially equivalent to the one he was denied."). It is the employer's responsibility to establish that equivalent positions are available with "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 624 (6th Cir.1983).[3] We agree with the Sixth Circuit approach that the employer must prove both the availability of suitable and comparable substitute employment and a lack of reasonable diligence on the part of the employee. *Rasimas*, 714 F.2d at 624. In determining whether reasonable diligence was used, the individual characteristics of the claimant and the job market must be considered. *Id.*

Applying the foregoing principles, it cannot be concluded that the failure of the Plaintiff to seek employment subsequent to his termination under the unique facts of this case constitutes the failure to exercise reasonable diligence as a matter of law. What sets this case apart is that the employee was a tenured professor, a highly protected employment status under the

---

**3.** While we recognize that *Ford Motor Co., Rasimas,* and *Nicks* are Title VII discrimination cases, we are persuaded that the rules announced in these cases are equally applicable to instances of wrongful termination such as the one presented by this case.

law, whose specialty was such that his professional reputation was perhaps his most valued asset. The press release essentially accusing the Plaintiff of theft and fraud, the extensive media coverage, and the investigation of the ethics committee of his licensing association, would have obviously made it exceedingly difficult, if not impossible, for the Plaintiff to locate a job commensurate with his training and within his professional capacity.

The Plaintiff testified in the hearing before the Master that the circumstances surrounding the dismissal would make attempts to find a job futile. His testimony was corroborated by several persons. One industrial organization psychologist who is on search committees for a college in Georgia, testified that "nobody in a psychology department would have hired him under those circumstances." Another industrial psychologist employed as a professor at Memphis State University testified that the circumstances of the firing were discussed in a disparaging and negative fashion among those in the academic field of Plaintiff's profession, as well as in the business community that would rely upon the Plaintiff's expertise. The opinion was expressed that even if the judicial system exonerated the Plaintiff, the impact of the firing would continue to plague him in the future. A professor of psychology teaching in Texas, who also does consulting work, testified that he had heard of the Plaintiff's firing at a national meeting of psychologists in Florida while speaking with the President of the American Psychological Association. "It was a topic of conversation at that meeting of chairpersons, and these chairpersons would be from all over the United States." Finally, the chief executive officer of a Fortune 500 corporation who had employed the services of the Plaintiff as a consultant, testified that had he known of the circumstances surrounding the Plaintiff's dismissal, he would not have hired him as a consultant. This individual testified:

"I absolutely would not have hired him. The criteria that we use is to explore the person's background. The ideal consultant is one who is a member of the staff of a prominent university and also has a consulting business. The reason is very simple. Consulting keeps the professor in the practical world, and the teaching provides the consultant with the latest research and the latest innovation in his profession. So, that is the ideal candidate.

If I were picking somebody from scratch, that's what I would look for. Somebody that was both a professor and a consultant. If a new person came to me and said, 'I'm a consultant, but I just got fired from my university,' I wouldn't even pursue the references or go to the interview stage."

Based. upon the proof discussed in the preceeding paragraphs, it is apparent that it would have been a useless gesture for the Plaintiff to have sought another professorship since no college or university would have hired a tenured professor of psychology who had been fired for fraud and theft. We adhere to the equitable maxim *lex neminem cogit ad vana seu inutilia peragenda* ("the law forces no one to do vain or useless things"). The Plaintiff cannot be faulted for electing not to send out a few perfunctory resumes under the circumstances. Additionally, the Plaintiff's established consulting business in Memphis would likely have been adversely affected had he left the Memphis area for other employment. His decision not to pursue employment opportunities was a reasonable one. To hold to the contrary would be tantamount to requiring an employee who has been wrongfully fired to conduct a nationwide job search. The burden on the employee would be sufficiently onerous to effectively prohibit the recovery of damages against the employer who wrongfully discharged them. It takes little imagination to recognize that there is probably suitable employment *somewhere* in the United States, but it would be absurd for the law to expect an individual to search for and accept a position potentially thousands of miles away from his home. In short, the employer in this case has failed to prove that the Plaintiff did not act in a reasonably diligent manner and also failed

to establish the existence of comparable employment within a reasonable distance from the Plaintiff's residence. We hasten to add, however, that it will only be the exceptional case where an employee will be justified in conducting no job search whatsoever on the basis of a belief in its futility.

The judgment of the trial court is reversed and the case remanded with instructions that a judgment be entered in favor of the Plaintiff consistent with the Master's report and this opinion. Costs of this appeal are taxed to the Defendant.

REID, C.J., and DAUGHTREY and ANDERSON, JJ., concur.

O'BRIEN, Justice, dissenting.

This case has been litigated for more than eleven years, through seven hearings.[1] The trial court ultimately decided that Professor Frye's firing by Memphis State University was not supported by clear and convincing evidence in violation of T.C.A. § 49–8–303(a)(4), which is the statute governing procedures for the termination of State University and College tenured faculty.

The Chancellor further held that the Professor had a duty to exercise reasonable diligence in seeking employment following the termination of his employment with Memphis State University.

Professor Frye was reinstated effective 21 August 1988. By agreement it was stipulated that damages would be calculated as of 25 September 1979 to be based on lost salary, longevity pay, athletic event discounts, insurance premium costs, pension benefits, prejudgment interest, and costs. The trial court referred the question of damages to a Special Master. After two days of hearings the Master calculated that the Professor was entitled to recover the sum of $429,258.00; representing salary he would have received since being terminated in the amount of $318,062.00, $27,476.00 insurance costs, and $83,720 in interest.

The Master found that Professor Frye's failure to seek employment during the seven years between his termination and the date of the hearing did not constitute a lack of reasonable diligence with respect to mitigation of damages. The University objected to that finding and the Chancellor agreed. He held that the Professor had a duty to exercise reasonable diligence in seeking employment following termination of his employment with Memphis State University and the maximum period of time during which it was reasonable for him to make no effort to seek employment was one year. He modified the award of damages to the sum of $39,515.00 representing compensation and interest for the academic year 1979 through 1980.

The majority now conclude that, under the unique facts of this case, the failure of Professor Frye to seek employment subsequent to his termination does not constitute failure to exercise reasonable diligence as a matter of law.

Professor Frye conceded he did not seek other employment after being terminated. Although an employee may recover lost wages when wrongfully terminated, there is a duty to minimize this loss by seeking other employment. See *Polk v. Torrence*, 218 Tenn. 680, 405 S.W.2d 575, 577 (1966). The law does not make exceptions for tenured professors who may or may not have a highly protected employment status. Their duty to abide by the law is precisely the same as is that of the most humble among the working citizens of this State. Professor Frye testified at the trial level that the circumstances surrounding his dismissal would make attempts to find a job futile. The University responds that subsequent to his termination several similar positions were advertised in a higher education publication as being available and his subjective perception as to the futility of a job search does not excuse the complete failure to attempt to mitigate damages by making a reasonable and diligent attempt to locate employment. I agree.

Throughout the course of these proceedings Professor Frye has maintained the termination of his employment was unjust.

---

1. Before a University Faculty Committee, the University President, a Board of Regents Per-

sonnel Committee, twice in Chancery Court and two times before this Court.

His position has been sustained by the courts, although, perhaps, not as decisively as might be preferred. Nevertheless, it was his obligation to endeavor to convince potential employers that he had been unjustly discharged.

His wrongful termination did not entitle him to sit idly by, doing nothing to ameliorate his situation. I am of the opinion he should not be rewarded for his indolence by payment of nearly a half million dollars. I would affirm the judgment of the Chancellor. Therefore I dissent.