STATE of Tennessee ex rel. Julia Anne McGHEE, Plaintiff–Appellant,

v.

Howard ST. JOHN, Carl Douglas, J.L. Davis, John Taylor, Linda Irwin, Walter Goins, and Vance Irwin, individually and collectively constituting the Campbell County Board of Education, Defendants–Appellees.

Supreme Court of Tennessee,
at Knoxville.

July 27, 1992.

David H. Dunaway, LaFollette, for plaintiff-appellant.

Joseph G. Coker, Jacksboro, for defendants-appellees.

## OPINION

DAUGHTREY, Justice.

This appeal involves a continuing dispute between the Campbell County Board of Education and a teacher discharged from the Campbell County High School in 1987. The case is before the Court on direct

appeal for the third and, we trust, the last time. Its earlier history can be traced in *McGhee v. Miller*, 753 S.W.2d 354 (Tenn. 1988) (*McGhee I*), and *McGhee v. Miller*, 785 S.W.2d 817 (Tenn.1990) (*McGhee II*). Those two appeals involved Julia Anne McGhee's ultimately successful efforts to be reinstated as a teacher in the Campbell County school system (*McGhee I*) and to receive the benefits to which she was entitled upon reinstatement (*McGhee II*). The current controversy arose when McGhee tried to resume her position as a senior English teacher at the Campbell County High School at the end of a 12–month leave of absence, which had been granted by the school board pursuant to T.C.A. §§ 49–5–702 and 49–5–703.

The provisions governing the teacher's return from leave are found in T.C.A. § 49–5–705, as follows:

*Teacher's reinstatement after leave.*— Upon return of the teacher within the twelve (12) months, the interim teacher shall relinquish the position, and the teacher shall return thereto. If the leave exceeds twelve (12) months, the teacher shall be placed in the same or a comparable position upon return from leave.

When the school board failed to assign McGhee to her former position at the high school, she sued the school board, seeking reinstatement to that position and back pay. The trial court ruled against McGhee, and she now appeals the chancellor's order dismissing her complaint. We find merit in her appeal and reverse the trial court's judgment in favor of the Campbell County Board of Education.

As the recitation of facts in *McGhee I* reflects, this case began in January 1987 when Anne McGhee, a tenured high school teacher, gave a failing grade in English to the school's star basketball player. McGhee was acting in compliance with administrative guidelines, which required the imposition of a failing grade if a student had more than five unexcused absences from class. The student in question had been absent on numerous occasions, and in spite of a warning, he had failed to resume regular attendance or to make up the work

he had missed in McGhee's class. As a result of receiving the failing grade, the student was academically ineligible to play basketball, a situation that was met with what is described in *McGhee I* as "a considerable hue and cry" in the school's athletic department and in the community in general. 753 S.W.2d at 355. Within a short period of time, petitions began circulating inside and outside the high school, calling for McGhee's dismissal as a teacher. On January 19, 1987, McGhee was intimidated by the high school principal into changing the student's grade from an F to a D-minus and, "too emotionally upset to complete her teaching assignments for the day," she left the high school and went home. *Id.*

The "stress and depression brought on by [these] events" caused McGhee to seek treatment from Dr. Mark Beale, a psychiatrist. *Id.* She notified school officials in early February that Dr. Beale thought she was not immediately able to perform her teaching duties. Nevertheless, the superintendent of schools ordered her to return to work by February 6, 1987, or face suspension.

In the meantime, petitions calling for McGhee's dismissal continued to circulate. On February 6 "someone fired a bullet through the windshield of Mrs. McGhee's automobile as she returned from Dr. Beale's office." *Id.* The harassment of McGhee also took other forms, not in and of themselves life-threatening, but certainly calculated to humiliate and ostracize her:

[For example,] buttons were sold on school property and at school ball games, at which members of the Board of Education were in attendance, commemorating the shooting. One type button said 'I didn't shoot Ann McGhee, I tried but missed.' Another 'had a head on them with a slash mark through them that said no love lost for Ann McGhee.'

*Id.*

When McGhee did not return to work on February 6, 1987, she was suspended. On April 8, 1987, the school board discharged her for "abandonment of her position, refusal to return to work, insubordination, and dereliction of duties." *Id.* at 356.

A week or so later, McGhee filed suit in chancery court, challenging her discharge by the school board. In June 1987, the chancellor ruled in her favor, finding that she had been wrongfully terminated. We affirmed, holding that McGhee "should be reinstated without the loss of any salary or perquisites of office." *Id.* In addition, we declined to allow an offset to the extent of a workers' compensation award that McGhee had secured in the meantime, holding that "if any offset were appropriate, it should have been sought in the workers' compensation case," not in the suit for reinstatement. *Id.* at 356–357.

The workers compensation case mentioned in *McGhee I* had actually been initiated in April 1987, shortly after McGhee filed the reinstatement action. As the basis for her compensation claim, McGhee alleged that she was totally and permanently disabled from teaching as the result of the circumstances leading to her discharge. At trial in November 1987, she presented the testimony of her psychiatrist, Dr. Beale, to support her claim.

The chancellor found in McGhee's favor, awarding her temporary total disability benefits from January through November 30, 1987, the date of the hearing, and permanent partial disability benefits equal to 50 percent of the body as a whole.

The workers' compensation judgment was not appealed, but in February 1988, the chancellor heard *McGhee I* on remand from this Court. In calculating the amount of back pay to be awarded McGhee, the chancellor made certain adjustments to avoid "double recovery" of salary and compensation benefits.

McGhee appealed, and although we affirmed the chancellor's ruling on "double recovery," we again emphasized that McGhee should receive "all perquisites and benefits" that she would have received but for her wrongful discharge. We reiterated that she was entitled to reinstatement, and we observed that "Mrs. McGhee has been treated *reprehensibly* by the Campbell County School Board." *McGhee II*, 785 S.W.2d at 819 (emphasis added).

Despite her repeated victories in court, McGhee's battle with the school board continued. The opinion in *McGhee I* was released on June 27, 1988, directing the teacher's immediate reinstatement. At that point, according to her physician, Dr. Beale, McGhee was not well enough to resume teaching. Consequently, on August 18, 1988, she sent a letter to the school board asking for a one-year medical leave of absence from her position as "Senior English Teacher at Campbell County Comprehensive High School." The minutes of the school board indicate that on October 21, 1988, the board "approve[d] a medical leave of absence for Anne McGhee, English Teacher at Campbell County High School, for the 1988–89 school year."

The following summer, on July 29, 1989, McGhee's lawyer sent a letter to Carl Baird, superintendent of the Campbell County Schools, notifying him that "Ms. McGhee desires to return to her position as a senior English teacher at Campbell County Comprehensive High School and that she will attempt to return to her teaching duties effective the beginning of the 1989–1990 academic year." The letter asked Baird to "[p]lease let us know the room to which Ms. McGhee will be assigned."

Baird did not reply to McGhee's letter immediately. Indeed, the opening of school in August 1989 came and went, and despite repeated inquiries by McGhee's attorney, no word from Baird or the school board was forthcoming. Finally, on October 9, 1989, Baird sent McGhee a response, as follows:

> This letter will serve as official notification that you are hereby being placed back into the Campbell County School System. The location is Wynn–Habersham School. You are to report [there] on Monday, October 16, 1989.

McGhee and her attorney immediately contacted the principal at Wynn–Habersham and were told that McGhee would be assigned to the only available opening there, which was a fifth grade elementary school class.

Dissatisfied with this assignment, McGhee's lawyer wrote Baird on October

13, 1989, pointing out that because his client had been granted a one-year medical leave of absence, she was entitled under T.C.A. § 49–5–705 to return to the same position from which she had been granted leave. He told Baird that McGhee was standing on her statutory right to be returned to her old job.

Moreover, he pointed out that her assignment to Wynn–Habersham was not even a "comparable position" under T.C.A. § 49–5–705, because it was for a position for which she was not even certified. In a long letter explaining McGhee's position, her lawyer politely but firmly relayed his client's decision not to accept the Wynn–Habersham assignment.

There was no response from the board. Two weeks later, McGhee's attorney filed suit on her behalf in chancery court, claiming breach of her employment contract and violation of state law, specifically the provisions in T.C.A. § 49–5–705.

In its answer to McGhee's complaint, the school board took the first of four different (and not always consistent) positions that it was to argue during the litigation of this matter, *i.e.*, that McGhee's leave of absence was for more than 12 months and, thus, under T.C.A. § 49–5–705 she was not entitled to be restored to the same position she had originally held, but could be returned to "a comparable position." The school board insisted that her assignment to Wynn–Habersham School was a position "comparable" to her former assignment as a senior English teacher.

To support its contention that the legal obligation to McGhee could be discharged by her assignment to a similar, but not necessarily the same position, the school board attached as an exhibit to its answer a written opinion received from Robert Sharp, legal counsel to the Tennessee State Department of Education. In a letter dated October 4, 1989, to Superintendent Baird, Sharp acknowledged that the county board of education *"must* offer Ms. McGhee a position this current year *in an area in which she is certified."* (Emphasis added.) Apparently misinformed about the facts of McGhee's leave, however,

Sharp went on to opine that "[h]aving been on leave for more than a year, she is not entitled to return to the same position she held prior to her wrongful discharge."

Despite its initial insistence that McGhee's leave was for more than a year and its reliance on Sharp's legal advice, the school board apparently realized at an early stage in the litigation that the facts plainly did not support such a defense, and the board soon abandoned this position. Indeed, at trial, Superintendent Baird testified unequivocally that McGhee's leave qualified as a one-year leave of absence for health reasons, beginning in August 1988. The term of the leave cannot have exceeded a year, since McGhee was not reinstated to her teaching position until *McGhee I* became final in June 1988.

In its answer to McGhee's pre-trial request for admissions, the board admitted that her leave was for no more than the 12-month limit specified in the statute, but set up a new theory of defense. The board contended that McGhee had no right to resume her former position as a senior English teacher at the high school because of "the facts and circumstances of this case."

Of the four different defenses raised during the course of these proceedings, this contention undoubtedly comes closest to reflecting the real reason for McGhee's reassignment to Wynn–Habersham School, even though it is legally the weakest of all the arguments made by the board. At trial, Superintendent Baird explained the special circumstances, as follows:

> The Board instructed me at that time [following receipt of Sharp's October 6 letter] that Mrs. McGhee would be placed back into the school system. They did not direct what position or what school.... I tried to consider what was, in my opinion, the best situation for [the] Campbell County School System as far as Ms. Anne McGhee being placed. I knew that she had requested to be placed back in the Comprehensive High School. I also knew the history of the problem that had been involved at the Comprehensive High School and I knew the

problems it had caused with the school ... and the attitudes of teachers and students there at the school toward Ms. McGhee. I was personally acquainted with Ms. McGhee. I felt like, for the benefit of the school, for the benefit of Ms. McGhee, that she should be placed in another ... school to teach.

Reminded that McGhee was not certified to teach elementary education and had, in fact, never taught an elementary class, Baird disclaimed any responsibility for her actual teaching assignment at Wynn–Habersham School, on the ground that he had directed the principal there to assign McGhee to teach in an area for which she was certified and was told by the principal that he would try to "work her into [such] a position." Baird's testimony indicates that he reached the dubious conclusion that as long as McGhee was placed in a teaching position of some kind in Campbell County, at the same salary and with the same benefits she would have received for teaching English at the senior high school, the board's obligation to her was satisfied, regardless of the provisions of § 49–5–705.

By the time trial concluded, however, the board had once again shifted its theory of defense. Counsel argued in closing that the dispositive issue in the case was the sufficiency of McGhee's original request for leave of absence in August 1988. Under T.C.A. § 49–5–702(c), an application for leave must contain "(1) A description of the type of leave requested; (2) The requested dates for beginning and ending the leave; and (3) A statement of intent to return to the position from which leave is granted."

The board's attorney argued that although the first two requirements of subsection (c) had been met, the letter from McGhee's lawyer did not contain an express statement of her intent to return to work at the end of the period of requested leave, and thus the requirements of § 49–5–705 were never triggered. Counsel for McGhee responded, correctly we think, that any such technical deficiency was cured when in response to her request, the board specifically granted McGhee a one-year medical leave of absence from her position

as a senior English teacher at the high school.

Certainly, the chancellor was not convinced by this argument alone. Although he ruled in the board's favor, dismissing McGhee's complaint, he did so on an entirely different basis from any of the theories propounded in the pleadings or at trial as a defense to McGhee's claim. In his memorandum opinion and final order of judgment, the chancellor held that McGhee was not entitled to reinstatement under § 49–5–705 because she had failed to prove that she was sufficiently recovered from the disability for which she had previously been awarded workers' compensation benefits. The chancellor noted that at the previous hearing on the workers' compensation claim, McGhee had testified "unequivocally that she was unable to teach and could not again teach." The chancellor reiterated his opinion, expressed at that hearing, that McGhee was "attempting to convert her 'position into one of permanent retirement at full pay.' " In this regard, he pointed to McGhee's letter notifying the board that she wished to resume her previous teaching position and noted that it did no more than express a desire "to attempt" to return to work. He ended his order by accusing McGhee of "manipulat[ing] the tenure statutes by taking contrary, rotative positions about her ability to teach," because she had previously "sworn at great length that she [was] permanently unable to teach" but now sought reinstatement to her original teaching position.

The chancellor failed to note that he himself had heard the workers' compensation claim and had found McGhee less than totally disabled. He also failed to note the fact that two years had elapsed since the workers' compensation matter had been decided.

■ On appeal, the school board has changed its theory of defense yet again, echoing the chancellor's findings and arguing as a basis for denying reinstatement that McGhee did not prove at trial that she was medically able to resume teaching. What this argument overlooks, however, is the plain fact that the school board must

have concluded that McGhee was sufficiently recovered to resume teaching, based on the report from Dr. Beale that she submitted to the board in connection with her letter of July 29, 1989. This is evident from the fact that the board subsequently voted to place McGhee back in the school system as a regular teacher and that Superintendent Baird actually assigned her to teach at Wynn–Habersham School. Insofar as the chancellor's decree rests on the theory of medical disability as a ground for denying McGhee the relief she seeks under T.C.A. § 49–5–705, we conclude that the legal analysis is flawed and that on the facts, the evidence preponderates to the contrary.

■ We further conclude that in dismissing McGhee's claim in this case largely on the basis of the proof in the workers' compensation action, the chancellor lost sight of the rulings in *McGhee I* and *McGhee II.* The entire chain of events involving Anne McGhee and her status as a teacher began when school officials took action against her that we later characterized as "reprehensible." There is a clear recognition in *McGhee I* that her original termination was wrongful. There is an equally clear finding in *McGhee II* that the circumstances surrounding that wrongful termination were so psychologically devastating that McGhee was unable to return to work for a period of time. This Court has stated unequivocally in both *McGhee I* and *McGhee II* that Anne McGhee is entitled to be "reinstated without the loss of any salary or perquisites of office," 753 S.W.2d at 356, and specifically that she must be "reinstate[d] ... to her teaching position at the Campbell County Comprehensive High School with all perquisites and benefits." 785 S.W.2d at 818. That is, put bluntly, the law of the case.

It is unfortunate for all concerned that we are now forced to make the same finding yet a third time. The school board apparently acted on poor advice from the Tennessee Department of Education, whose legal counsel in turn had been given misinformation from Superintendent Baird. Baird was undoubtedly sincere, if paternal-

istic, when he testified that in assigning McGhee to another school, he was only trying to do what he thought was best for the school system and for her. If Anne McGhee had been willing to accept reassignment, there would, of course, have been no need for further litigation. But the new assignment turned out to be one for which she was not certified and for which she had no prior experience. Hence, she elected to stand on her rights under the statute. If McGhee is denied relief at this juncture, she will finally be eliminated altogether from the Campbell County school system, which is exactly the result intended by those who originally clamored for her discharge in 1987.

School officials must, of course, be allowed sufficient latitude to do what they think is best for their individual school systems. But in making administrative decisions affecting the assignment of teachers, they must also observe state law regarding personnel matters. In this case, the school board exercised its discretion under T.C.A. §§ 49–5–702 and 703 and granted Ann McGhee a medical leave from her position as senior English teacher for the school year 1988–89. When she notified the board at the end of that one-year leave that she wished to resume her position for the 1989–90 school year, and no question was raised about her ability to do so, the board lacked discretion under the facts presented in this record to assign her to a position other than the one from which she had been granted leave, as required by T.C.A. § 49–5–705. At that time, McGhee's former position had been filled by a temporary teacher, and McGhee could have been reinstated without serious disruption in personnel. Any disruption now caused by the passage of time is regrettable, but it cannot be attributed to Anne McGhee, nor should she be made to suffer for it.

We therefore remand this case to the trial court for entry of an order directing the appellant's reinstatement to her position as senior English teacher at the Campbell County Comprehensive High School, and for calculation of the damages to which she is entitled. Those damages are to be measured by the standard set out in

*Frye v. Memphis State University,* 806 S.W.2d 170 (Tenn.1991), involving the wrongful discharge of a tenured university professor. ·

In *Frye,* we held that "[w]hen an employee has been wrongfully terminated, the measure of damages is the amount the employee would have earned had the employer not dismissed him, less what would have been earned, or might have been earned, in some other employment, by the exercise of reasonable diligence." *Id.* at 173. We noted, however, that "[a]n employee is not required to go to heroic lengths in attempting to mitigate his damages, but only to take reasonable steps in doing so." *Id.* Nor is the employee "required to mitigate damages by accepting a position that is not comparable or is, in effect, a demotion." *Id.* Moreover, "[t]he burden is on the employer to establish that the employee failed to exercise reasonable diligence in mitigating damages." *Id.*

■ Because it would have been virtually impossible for Anne McGhee to acquire another teaching position for the 1989–1990 school year, given the fact that the academic year was well under way by the time she was constructively discharged by Baird's letter of October 9, 1989, we hold that McGhee is entitled to receive the equivalent of her salary and benefits for that year, without diminution of any kind.

■ As for the two ensuing school years, 1990–1991 and 1991–1992, we cannot predict what the proof will show on remand, but we suggest that at a minimum, the *Frye* rule would not require Anne McGhee to accept a teaching assignment within the Campbell County School System that was not "comparable" to her former position as a senior English teacher, or one for which she was not certified to teach. Nor would it force her to accept a comparable teaching position outside Campbell County, unless it can be established that one was available "within a reasonable distance from the Plaintiff's residence." *Frye, supra,* at 174–175. However, if the proof shows that Anne McGhee *did* accept a teaching position in another school system, or that she has been gainfully employed in some other capacity, her income from that employment must be calculated to offset the amount otherwise due McGhee for her lost salary and the value of her employment benefits from August 1990 to the end of the 1992 school year.

The judgment of the trial court is reversed, and the case is remanded for further proceedings in conformity with the instructions set out in this opinion. Costs in both this court and the trial court will be borne by the appellees.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

O'BRIEN, J., concurs and dissents in part (see separate opinion).

O'BRIEN, Justice, concurring and dissenting.

I concur in the majority opinion insofar as it restates the crux of the decisions referred to as McGhee 1 and 2.[1] I depart in some degree from the majority's version of the facts in this case and, certainly, from their interpretation of the law.

It is doubtful there will ever be a conclusion to this case satisfactory to the parties on either side. Therefore, it becomes necessary to abide by the judgments of the courts, regardless of the parties displeasure with the results. There must be a conclusion to this matter.

In the first instance, in August 1987 Ms. McGhee was reinstated to her "teaching position at the Campbell County Comprehensive High School with all perquisites and benefits," with an additional award of described monetary benefits, by the judgment of the Chancery Court of Campbell County in Cause No. 11822. In this case No. 11822 was consolidated with No. 12452, the current action. The judgment in the consolidated case was appealed to this Court by the plaintiff. The judgment of the court in No. 11822 has not been included in the record although it was concurred

---

1. *McGhee v. Miller,* 753 S.W.2d 354 (Tenn.1988);    *McGhee v. Miller,* 785 S.W.2d 817 (Tenn.1990).

in and affirmed in both *McGhee* 1 and *McGhee* 2.

The immediate case, No. 12452, prayed for a writ of mandamus requiring Campbell County Board of Education to restore plaintiff to her employment, and to employment benefits for the academic year 1989–1990.

The chancellor found (1) that plaintiff had failed to prove by satisfactory evidence that she was entitled to the relief sought; (2) that she alleged and testified *only* that she "desired to attempt" to return to high school teaching, while carefully avoiding a firm commitment to do so; (3) that she was offered a position at the same salary, to teach elementary English, which she disdained; (4) that she could not be allowed to manipulate the tenure statutes by taking contrary, rotative positions about her ability to teach in that she had previously sworn at great length that she was permanently unable to teach. At the time of the entry of the decree on 16 October 1990 she was still receiving workers' compensation benefits due to her disability to teach and remained equivocal about it. He ruled that the remaining claims in the consolidated actions should be dismissed. In a memorandum opinion, incorporated in the judgment order, he additionally found "that plaintiff had received a fifty percent (50%) partial, permanent disability, predicated upon her testimony that she could never return to teaching, which was corroborated by her psychiatrist. Through egregious error the court also awarded her substantial benefits for temporary total benefits, (sic) having previously awarded her a full recovery for loss of wages. This double recovery was not intended, but the Board's insurer took no remedial action and left the court powerless to correct the error."

The issues raised before this Court are as follows:

I. Is the plaintiff entitled to reinstatement to her position as a senior English teacher at the Campbell County Comprehensive High School with full benefits for academic year 1989–1990?

II. Whether a writ of mandamus should have been issued by the chancery court for Campbell County compelling the Campbell County Board of Education to restore appellant to her position as senior English teacher at the Campbell County Comprehensive High School?

The majority in this case, after reviewing the various defenses raised by the defendant, noted that in making administrative decisions affecting the assignment of teachers the school officials must also observe State law regarding personnel matters. They found the school board exercised its discretion under T.C.A. § 49–5–702 and granted Anne McGhee a medical leave from her position as senior English teacher for the school year 1988–89. When she notified the Board at the end of that one (1) year leave that she wished to resume her position for the 1989–1990 school year, no question was raised about her ability to do so, and the Board lacked discretion under the facts presented in the record to assign her to a position other than the one from which she had been granted leave, as required by T.C.A. § 49–5–705. They further found that at that time, McGhee's former position had been filled by a temporary teacher, and McGhee could have been reinstated without serious disruption in personnel. The case was remanded to the trial court for entry of an order directing the appellant's reinstatement to her position as senior English teacher at the Campbell County Comprehensive High School, and for calculation of damages to which she might be entitled as measured by the standards set out in *Frye v. Memphis State University*, 806 S.W.2d 170 (Tenn.1991), involving the wrongful discharge of a tenured university professor.

A correct review of the facts and a measured application of the law on the subject to those facts makes it plain that the majority has erred in both areas. In applying the law they limited its application to Part 702 and 705 of Title 49, Chapter 5 of the Tennessee Code. Chapter 5 of Title 49 deals with personnel and contains various other parts which include, Part 4—Employment and Assignment of Personnel; Part 5—Teachers Tenure; as well as Part 7

containing a variety of sections pertaining to leave.

In construing a statute to determine its meaning the primary rule is to ascertain and give effect to the legislative intent as expressed. Its meaning is to be determined not from special words in a single sentence or section, but from the statute taken as a whole and viewing the legislation in light of its general purpose. *See State ex rel. Bastnagel v. City of Knoxville*, 224 Tenn. 514, 457 S.W.2d 532, 534 (1970). (Citations omitted). A statute must be construed as a whole and a particular section should not be read in isolation of the remainder of the statute. Tenn.Juris., Vol. 23, Statutes, Sec. 25, p. 63.

Part 4 of Title 49, Chapter 5, provides for employment and assignment of personnel. T.C.A. § 49–5–401(a) provides specifically that it is the duty of the local Board of Education to elect and assign all public school teachers, principal-teachers and other school personnel on or before May 15 preceding the next school year for which such personnel shall be employed. T.C.A. § 49–5–402 relates to the establishment of salary ratings of each person employed as a teacher by the superintendent, using for this purpose the *established training and experience of school personnel and the respective State salary schedule for the school year*, as prescribed by the State Board of Education and approved by the Commissioner of Education. T.C.A. § 49–5–409 provides for the method of terminating teacher's contracts and makes the specific exception *in subsection (b)(2) that the Board of Education may transfer any teacher from one position to another at its option*, subject to securing any rights accrued or accruable under any law providing a tenure of office for the teacher's and principals.

The various chapters, parts and sections of Title 49, must be considered in pari materia. Without considering the specific provisions of the tenure sections, those sections pertaining to leave would have no meaning. It was under Part 5 of Title 49, Chapter 5, that the trial court and this Court held that Ms. McGhee was entitled to be reinstated without loss of pay or perquisites. Therefore, it must be considered in conjunction with Part 7 in relationship to the rules and regulations setting up sick leave and personal and professional leave for teachers in the public schools.

In their determination that the school board properly exercised its discretion under T.C.A. § 49–5–703 to grant Anne McGhee a medical leave from her position as senior English teacher for the school year 1988–89 the majority brushes over the requisites to apply for leave of Sec. 702. Subsection (b) requires all requests to be in writing at least thirty (30) days in advance on forms adopted by the local board of education and uniformly used throughout the school system. Ms. McGhee's attorney ignored this requirement in making her leave application.

In stating that the school board lacked discretion, under T.C.A. § 49–5–705, to assign Ms. McGhee to any other position than the one from which she had been granted leave, the majority overlooks the fact that she had been absent from that position for a period far exceeding 12 months. Regardless of fault, Ms. McGhee had not served in the position of Senior English Teacher at Campbell County Comprehensive High School since January, 1987. There had been a teacher, or teachers, working in that position during all of that interval and not an interim teacher for the 12–month leave period delineated in T.C.A. § 49–5–709(b).

Both plaintiff and defendants in these cases have tenaciously resisted compliance with the rulings of the courts. Defendants appealed from the original judgment for plaintiff in the trial court. Ms. McGhee has been represented by counsel throughout these proceedings. She could have easily applied for medical leave in the first instance. A leave application at that time would have preserved all of her statutory rights to tenure, salary and fringe benefit credits for which she has so fiercely litigated. See T.C.A. § 49–5–708.

To recapitulate, Ms. McGhee is entitled to reinstatement as of the date of the first trial court decree in the original action in Cause No. 11822. In light of *McGhee 1*

and *McGhee* 2 the chancellor is bound by that judgment. In both of those cases this Court made reference to the payment made by the School Board's insurer in the workers' compensation case to the effect, and with the intent to say, that if any set off was appropriate it should have been sought in the workers' compensation case. The trial judge made note in his memorandum opinion that he had erred in his prior judgment by allowing a double recovery both for compensation benefits and a full recovery for loss of wages. That is not a matter to be considered in this case. On 29 July 1989 Ms. McGhee, through her attorney, indicated her desire to return to her position as a senior English teacher at Campbell County Comprehensive High School, saying that she would *attempt to return* to her teaching duties effective at the beginning of the 1989–1990 academic year. This notice did not meet the requirement of T.C.A. § 49–5–702. The record clearly shows that between January 1987 and July 1989, on at least four (4) occasions, appellant, either in person, or through medical records and reports by various physicians, indicated that she was psychologically and emotionally not able to return to work. The latest of these occasions was at the hearing held on 1 February 1989 in which she said unequivocally that she was not able to go back to work and if she was able, she would be there. Notwithstanding the foregoing, on 9 October 1989 the Campbell County Board of Education through Superintendent of Schools Carl E. Baird, notified Ms. McGhee that she was being placed back in the Campbell County School System to report to the Wynn–Habersham School. Mr. Baird testified that once he received the request from Ms. McGhee's attorney to return back to work in Campbell County he discussed the matter with the board at a board meeting. He was instructed to place her back into the school system. The Board did not specify a position or a school. He tried to consider what was, in his opinion, the best situation for the school system and for Ms. McGhee. He knew the history of the problem involved at the Comprehensive High School, and the situation which had developed

when Ms. McGhee was teaching there. He knew the attitude of the teachers and students at the school toward her. He was personally acquainted with Ms. McGhee and felt for the benefit of the school, and for the benefit of Ms. McGhee, that she should be placed in another location in Campbell County, in another school to teach. He testified that Ms. McGhee would be teaching in her certified area at Wynn school. She would be receiving the same salary and benefits. (Transcript of proceedings p. 56, et seq.) This assignment complied with T.C.A. § 49–5–510. She declined to accept any assignment other than her former position at Campbell County Comprehensive High School.

Tenure is a status, indicating the statutory requirements, conditions, relations and provisions under which a teacher employed by a school board holds a position as a teacher under the jurisdiction of the Board. It does not necessarily mean tenure in the specific type of position in which a teacher may be employed. *See* T.C.A. § 49–5–501(11)(C). The Teacher Tenure Act does not guarantee continuity of employment in a particular assignment or school. *See Van Hooser v. Warren County Board of Education,* 807 S.W.2d 230, 241 (Tenn. 1991). T.C.A. § 49–5–409 relating to termination of Teacher's Contracts provides that the Board of Education *may transfer any teacher from one position to another at its option.* T.C.A. § 49–5–510 particularly provides that when necessary to the efficient operation of the school system, *the superintendent, with the approval of the Board, may transfer a teacher from one location to another within the school system, or from one type of work to another for which he or she is qualified and licensed.* If any part of Chapter 5 of Title 49 could possibly be construed to require Ms. McGhee's reinstatement at Campbell County Comprehensive High School there is no doubt she could be transferred under the foregoing statutes on the very day she was reinstated. To say that reinstatement means that she was entitled to be restored to any specific position is plain legal sophistry. If Ms. McGhee desires to resume her status as a teacher she may apply for a

teaching position within the system to an assignment to be made by the concurrent action of the superintendent and the school board. She cannot be denied this right, subject to the due process provisions of T.C.A. § 49-5-511, et seq. The issuance of a writ of mandamus was not appropriate in this case. The appeal should be dismissed.