Darrell D. THURMAN, Plaintiff–Appellee,

Cross–Appellant,

v.

YELLOW FREIGHT SYSTEMS, INC., Defendant–Appellant, Cross–Appellee.

Nos. 94–6109, 95–5064.

United States Court of Appeals, Sixth Circuit.

Argued April 11, 1996.

Decided July 26, 1996.

Richard J. Ebbinghouse (argued and briefed), Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for Plaintiff-Appellee, Cross-Appellant.

Jeff Weintraub (briefed), J. Gregory Grisham (argued and briefed), Weintraub, Robinson, Weintraub, Stock, Bennett, Ettinghoff & Grisham, Memphis, TN, for Defendant-Appellant, Cross-Appellee.

Before: SUHRHEINRICH and SILER, Circuit Judges; EDMUNDS, District Judge.*

_____

* The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

EDMUNDS, District Judge.

Plaintiff brought this case against his former employer, claiming race discrimination in violation of Title VII, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981. After a bench trial, the district court found that Yellow Freight Systems, Inc. discriminated against Darrell Thurman by failing to hire him as a full time employee. The district court awarded back pay, costs, and attorney fees, and denied Thurman's requests for instatement, compensatory and punitive damages, prejudgment interest, and front pay. Defendant appealed and Plaintiff cross-appealed.

## I.

Plaintiff, Darrell Thurman, is a black man who was employed by Defendant, Yellow Freight Systems, Inc., a "less than a truckload" common carrier based in Memphis, Tennessee. Thurman began working as a casual employee for Yellow Freight on September 20, 1988. He sought to become a regular full time employee. To qualify for consideration as a regular employee, a casual employee needed 1) a commercial driver's license; 2) two years experience driving tractor-trailers; and 3) passing results on a driver's test, a physical exam, and a drug test. In considering casual employees for full time work, Yellow Freight used no objective criteria regarding work performance. When Yellow Freight needed to hire another regular employee, Larry Rock, the General Operations Manager, would ask the shift managers and dock supervisors [1] to recommend one of the casuals. Recommendations were made based on an employee's "hustle" or speed, his attitude, and his skill in properly stacking freight. Previous work experience and longevity with the company were also factors.

In late 1988, Larry Rock asked Thurman if he was interested in a full time job. Thurman responded that he was, and gave Rock a copy of his state driving record. His record contained no negative information. In December 1988, Thurman passed Yellow Freight's drivers test, and on January 4,

_____

1. During the time Thurman was at Yellow Freight, there were no black shift managers or dock supervisors.

1989, he passed the physical exam. Yellow Freight gave Thurman a "New Hire Kit" containing a new W–4 form and a credit union application. After he received these forms, Thurman thought he was a regular employee. However, Yellow Freight did not hire him. Instead, in January 1989, Yellow Freight hired five white employees.

As a result of Yellow Freight's failure to hire him as a regular employee, Thurman filed an EEOC claim and later this lawsuit, claiming race discrimination. Yellow Freight contended it did not hire Thurman because Thurman was an average or poor worker, and the whites hired were better workers. Thurman presented contradictory evidence that his performance was superior to the whites the company hired.

Despite Yellow Freight's claim that Thurman's work performance was poor, Yellow Freight used Thurman as a casual for a great number of hours just before it did its January 1989 hiring. When Yellow Freight needed more workers, shift managers attempted to call the best performing casuals first. In the period between September and December 1988, Thurman worked more hours than the average number of hours that white casuals worked.

During discovery and in the pre-trial order, Yellow Freight had indicated it had hired only four white employees. During cross examination of Larry Rock, however, Rock revealed that Yellow Freight in fact had hired five white employees, and the fifth one was Jerry Clay. Yellow Freight hired him on January 8, 1989, and then fired him eight days later due to poor work performance. There was evidence at trial that Yellow Freight had racist hiring practices in the past. Since 1974, Yellow Freight has been bound by a consent decree. The consent decree provides that Yellow Freight must meet a 33% minority hiring goal. Yellow Freight has met this goal in some years, and has failed to meet it in others. In 1986, 46% of Yellow Freight's new hires were minorities, in 1987 only 9% were minorities, and

in 1988 only 17%. During 1987 and 1988 a number of other truck lines went out of business, thus there were experienced blacks available for hire in the labor market.[2]

In the spring of 1989, Thurman left his employment at Yellow Freight. In August 1990, Thurman went to work for Riggs Trucking Company, for a job substantially similar to his job at Yellow Freight. During his probationary period, he damaged a truck and was fired. From August 1991 to October 1992, Thurman worked for Parts, Inc. During that time, Thurman permanently injured his back.

A bench trial was held and on July 29, 1994, the district court held that Yellow Freight intentionally discriminated against Thurman and that Yellow Freight's proffered reasons for not hiring Thurman were a pretext for discrimination. The court rejected Yellow Freight's after-acquired evidence defense and rejected Yellow Freight's claim that backpay should be tolled due to Thurman's failure to mitigate. The court awarded Thurman backpay in the amount of $95,-782.21, reducing the award to account for unemployment income and worker's compensation Thurman had received. The court also awarded costs and attorney fees in the amount of $109,923.61. The court denied Thurman's requests for instatement, compensatory and punitive damages, prejudgment interest, and front pay. The court did not award pension benefits. Defendant appealed and plaintiff cross-appealed.

## II.

This court reviews questions of law de novo, *Weimer v. Kurz–Kasch, Inc.,* 773 F.2d 669 (6th Cir.1985), and questions of fact under the clearly erroneous standard. *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The clearly erroneous standard requires this court to give deference to the finder of fact. As the Supreme Court explained:

**2.** The consent decree requires that when a minority applies for employment with Yellow Freight and Yellow Freight fails to hire that minority, Yellow Freight must document the rea-

sons why it failed to hire the person. Yellow Freight did not document the reasons why it failed to hire Thurman.

If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*City of Bessemer,* 470 U.S. at 573–74, 105 S.Ct. at 1511. Such deference to the trial court is necessary because the trial judge is in the best position to determine credibility of witnesses. *Id.* at 574–75, 105 S.Ct. at 1511–12.

## III.

### A. Discrimination

██ Title VII provides that it is an unlawful employment practice for an employer to discriminate against an individual by failing or refusing to hire him on the basis of race. 42 U.S.C. § 2000e–2(a)(1). In a Title VII action, the plaintiff has the burden of proving a prima facie case. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). A claimant may prove a prima facie case by bringing forth credible, direct evidence of discriminatory intent, *Terbovitz v. Fiscal Ct. of Adair Cnty.,* 825 F.2d 111 (6th Cir.1987), or through circumstantial evidence showing:

1) he is a member of a protected class;
2) he was qualified for the job;
3) he suffered an adverse employment decision; and
4) he was treated differently than similarly situated whites.

*Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1109 (9th Cir. 1991); *see McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824–25.

██ Once a plaintiff has met his burden of production and has established a prima facie case of discrimination, the burden of production shifts to the defendant to establish a legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825–26. If the defendant carries this burden, the presumption raised by plaintiff's prima facie case is rebutted. The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination *and* that the employer intended to discriminate on the basis of race. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). It is at this stage that credibility is assessed. *Id.* at 508–10, 113 S.Ct. at 2748. A plaintiff can prove discrimination either (1) by showing that a discriminatory reason more likely motivated the employer or (2) by showing that the employer's explanation is unworthy of credence. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination. . . .

*St. Mary's,* 509 U.S. at 510–11, 113 S.Ct. at 2749 (emphasis in original).

██ The parties do not dispute that Thurman presented a prima facie case. However, Yellow Freight contends it rebutted any presumption raised by the prima facie case by proving it had legitimate reasons for failing to hire Thurman: his work performance was poor and the work performance of the whites was better. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078 (6th Cir.1994) (performance problem can be legitimate nondiscriminatory reason for adverse employment action). The trial court found, however, that these reasons were a pretext for intentional discrimination. On appeal, Yellow Freight points to each distinct piece of evidence and argues that that evidence does not mandate an inference or a finding of discrimination. This analysis is improper, however, as it was the trial court's duty to review all of the facts together, not in isolation. A review of the record

as a whole shows that the trial court's finding of intentional discrimination was not clearly erroneous.

The criteria for hiring casuals as full time employees was solely subjective. Rock, the shift managers, and the dock supervisors who decided against hiring Thurman were all white. Thus, the court carefully scrutinized Yellow Freight's decision not to hire Thurman. *Bruhwiler v. University of Tennessee,* 859 F.2d 419, 421 (6th Cir.1988) (employment decision is subject to "particularly close scrutiny" when it was subjective and decision makers were not members of minority group). Close scrutiny of Yellow Freight's hiring decision was also mandated because Yellow Freight failed to meet its consent decree minority hiring goals in 1987 and 1988, a time period when qualified minorities were available for hire due to the dissolution of other trucking companies in the area. *Chang v. Univ. of Rhode Island,* 606 F.Supp. 1161, 1183–84 (D.R.I.1985) (heightened scrutiny applied due to defendant's past discriminatory practices); *Gonzales v. Police Department, City of San Jose,* 901 F.2d 758, 760–61 (9th Cir.1990)(failure to comply with affirmative action goals is evidence of discrimination).[3]

■■■■ The trial court doubted the credibility of Yellow Freight's witnesses and believed Thurman's witnesses.[4] Under the clearly erroneous standard, this court must defer to the trial judge's findings based on credibility. *City of Bessemer,* 470 U.S. at 574–75, 105 S.Ct. at 1511–12. Yellow Freight's lack of credibility is reflected in the record in numerous ways. For example, Yellow Freight failed to disclose during discovery that it hired Mr. Clay in January 1989 and then fired him eight days later. This was strong evidence of an attempt to hide discriminatory actions. Also, Yellow Freight changed its factual position as the litigation continued. An employer's changing rationale for making an adverse employment decision can be evidence of pretext. *Edwards v. U.S. Postal Service,* 909 F.2d 320, 324 (8th Cir. 1990); *Schmitz v. St. Regis Paper Co.,* 811 F.2d 131, 132–33 (2d Cir.1987). In January 1989 when Thurman confronted Rock to ask why he had not been hired, Rock made no mention of any work performance problems. In fact, from October through December of 1988, Thurman worked more often than the other casuals, evidence that his work was satisfactory. Then, during discovery, Yellow Freight responded to interrogatories indicating that Thurman was "at best an average worker when he started out as a casual employee, and his performance and attitude waned somewhat after three months."[5] In the pretrial order, Yellow Freight claimed that it did not hire Thurman as a regular employee due to poor performance.

Yellow Freight also argues that there is an inference of nondiscrimination when an adverse employment decision is made by the same person who hired the plaintiff, citing *Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 785, 133 L.Ed.2d 736 (1996). Rock both hired Thurman as a casual and

---

3. Yellow Freight argues that the trial court should have considered the fact that it met or exceeded its minority hiring goals after 1988. However, the evidence that Yellow Freight met its goal *after* Plaintiff filed his EEOC charge does not sanction discrimination that occurred previously. *E.E.O.C. v. New York Times Broadcasting Service, Inc.,* 542 F.2d 356, 361 (6th Cir.1976) (voluntary corrective action does not render litigation moot, it only affects relief court may order).

4. Yellow Freight contends that the trial court should not have been persuaded by the testimony of Thurman's witnesses because they were coworkers and not supervisors, citing *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120 (7th Cir. 1994). *Anderson* does not apply here. In that case, the court held that the affidavits of cowork-

ers regarding a plaintiff's work performance were insufficient to defeat summary judgment. Here, there was no question of a genuine issue for trial. Courts take into account coworker testimony in determining whether a plaintiff has proven a prima facie case. *Taylor v. Philips Industries,* 593 F.2d 783 (7th Cir.1979).

5. Thurman started at Yellow Freight on September 20, 1988. Thus, Yellow Freight's claim that his performance waned after three months means that his performance allegedly waned at the end of December. The record shows that this claim is disingenuous because it was during this time period that Yellow Freight asked Thurman to take a physical exam in order to qualify for full time employment. He passed the physical on January 4, 1989.

made the final decision not to hire him as a full time employee. While there is an inference of nondiscrimination, the sum of the evidence, as discussed above, rebutted this inference.[6]

### B. After–Acquired Evidence

In addition to claiming that Thurman was not as qualified as the whites it hired, Yellow Freight asserted the "after-acquired evidence" defense. This doctrine applies to bar an employee from obtaining certain remedies in a discrimination case. Where an employer can show it would have been entitled to terminate the employee for severe wrongdoing, if it had known of the employee's wrongdoing at the time, the employee's remedies for discrimination are limited. *McKennon v. Nashville Banner Publishing Co.,* —— U.S. ——, ——————, 115 S.Ct. 879, 886–87, 130 L.Ed.2d 852 (1995) ("Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge.") As a general rule, under the after-acquired evidence doctrine the employee is barred from obtaining front pay and reinstatement, and backpay is limited. *Id.* at ——, 115 S.Ct. at 886.

Yellow Freight contended that if it had known Thurman made omissions and misrepresentations on his employment application, it would not have hired him. Thurman left blank a question asking if he had had any accounts placed for collection. In fact, a utility account for $27 had been placed for collection. Thurman claimed he had not received the bill because he had moved. He later paid the bill. He also left blank a question asking why he had left his job at The Commercial Appeal. Yellow Freight contended he had been fired due to poor performance. In addition, Thurman misstated the dates that he worked at The Commercial Appeal. He stated he had worked there from March 1982 to March 1985. In fact, he worked there from January 1984 to late February 1985.

The trial court found it was not true that Thurman had been fired due to poor performance, since The Commercial Appeal had later recommended him for another job. This factual ruling was not clearly erroneous, as the court could reasonably conclude from the recommendation that the circumstances of Thurman's termination were not negative. Further, the court found that the omission regarding the utility account and the misstatement regarding the dates of employment were not material. The small utility bill had been paid. Even though Thurman misstated his dates of prior employment, he still met Yellow Freight's qualification of two years driving experience. Because Yellow Freight failed to prove it could have and would have refused to hire Thurman, the after-acquired evidence defense did not apply.

### C. Duty to Mitigate

As a general rule, when a court finds discrimination it must award backpay. "The special factors which would constitute exceptional circumstances and prevent backpay awards are exceedingly rare." *Rasimas v. Mich. Dept. of Mental Health,* 714 F.2d 614, 626 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). A Title VII litigant who redresses his own injury also vindicates the public purpose of deterring discrimination. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 45, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1974).

A plaintiff has a duty to mitigate his damages by seeking suitable employment with reasonable diligence. 42 U.S.C. § 2000e–5(g); *Ford Motor Co. v. E.E.O.C.,* 458 U.S. 219, 232, 102 S.Ct. 3057, 3065–66, 73 L.Ed.2d 721 (1982); *Whatley v. Skaggs Companies, Inc.,* 707 F.2d 1129, 1138 (10th Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983). If an employee suffers a "wilful loss of earnings," however, the em-

---

**6.** Yellow Freight emphasizes on appeal that even though management gave Thurman a "New Hire Kit," it never promised Thurman a full time job. This may be true, but it is not relevant. Thurman did not claim breach of contract or promissory estoppel. He claimed that Yellow Freight discriminated against him when it decided to hire white employees instead of him.

ployer's backpay liability is tolled. It is the employer's burden to prove that backpay should be tolled. *N.L.R.B. v. Ryder System Inc.*, 983 F.2d 705, 712 (6th Cir.1993).

In *Ryder*, an employer claimed backpay should be tolled because the plaintiffs were fired for insubordination and therefore suffered a wilful loss of earnings. The court held, "[A] discharge from interim employment will toll backpay liability only if the employee's misconduct was 'gross' or 'egregious.'" *Id.* at 713. Similarly, an employee's discharge for cause due to his wilful violation of company rules will toll backpay. *Brady v. Thurston Motor Lines*, Inc. 753 F.2d 1269 (4th Cir.1985).

Yellow Freight claims that Thurman failed to mitigate his damages because Riggs Trucking Company, his subsequent employer, fired him for cause. During his probationary period at Riggs, Thurman drove a truck under an overpass that was too low. As a result, he bent the exhaust pipe. Riggs discharged him due to the accident. There was no evidence that Thurman acted intentionally. Thus, Yellow Freight failed to establish that Thurman acted wilfully or committed a gross or egregious wrong. Backpay should not be tolled and the district court is affirmed on this issue.

### D. Attorney Fees

Yellow Freight asserts on appeal that the district court erred because it failed to reduce Thurman's attorney fees substantially due to Thurman's less than complete success in this case. The district court used the lodestar method and reduced the award by five percent due to Thurman's partial success on his claims. Yellow Freight argues that the reduction should have been greater because Thurman was successful on only two of his original six claims. Thus, Yellow Freight argues, Thurman had limited success and the district court should have reduced the fee award by at least forty percent.

Thurman originally claimed 1) discrimination due to failure to hire in violation of Title VII; 2) failure to hire under 42 U.S.C. § 1981; 3) retaliation under Title VII; 4) retaliation under § 1981; 5) discrimination in the terms and conditions of employment under Title VII; and 6) discrimination in the terms and conditions of employment under § 1981.[7] Thurman requested backpay, instatement, compensatory and punitive damages, and prejudgment interest. Thurman won on his claims of failure to hire and was awarded backpay.

The extent of a plaintiff's overall success must be considered in making an award of attorney fees. *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 910 (6th Cir.1991). However, a court should not reduce attorney fees based on a simple ratio of successful claims to claims raised. *Phelan v. Bell*, 8 F.3d 369, 374 (6th Cir.1993). When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). For example, a plaintiff's claim that his employer discriminated against him by failing to hire and promote him is related to his equal pay claim, and thus the district court should not reduce attorney fees due to the plaintiff's success on only some of these claims. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1137 (11th Cir.1984). *Accord Lil-*

---

7. Thurman also originally brought a class action claim. He voluntarily withdrew this claim.

*ley v. BTM Corp.,* 958 F.2d 746, 756 (6th Cir.) (claims for age discrimination and retaliatory discharge are related), *cert. denied,* 506 U.S. 940, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992); *Williams v. Roberts,* 904 F.2d 634 (11th Cir.1990) (claims for retaliatory transfer and discharge are related).

In this case, Thurman was successful overall, as he won on his claim of failure to hire and was awarded backpay. The trial court, in its discretion, reduced the attorney fees by five percent because Thurman was not entirely successful. This fee award was appropriate and within the district court's discretion, because the claims upon which Thurman did not prevail were related claims and related requests for relief.

### E. Prejudgment Interest

■ Thurman appeals the trial court's denial of prejudgment interest. In this circuit, the award of prejudgment interest is within the discretion of the trial court. *E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n,* 727 F.2d 566, 579 (6th Cir.1984). An abuse of discretion will be found where the district court plainly erred. *In re Bendectin Litigation,* 857 F.2d 290, 307 (6th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989).

■ Prejudgment interest is usually appropriate to make a discrimination plaintiff whole.

> An award of "prejudgment interest ... (ellipsis in original) is an element of complete compensation" in a Title VII back pay award. Prejudgment interest helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred. This court commonly awards prejudgment interest on back pay awards.

*E.E.O.C. v. Wilson Metal Casket Co.,* 24 F.3d 836, 841–42 (6th Cir.1994) (citations omitted). Discrimination victims should not be penalized for delays in the judicial process and discriminating employers should not benefit from such delays. *Id.* at 842. While prejudgment interest should be awarded as a part of backpay, it should be excluded for delays specifically attributable to the plain-

tiff. *Shore v. Federal Express Corp.,* 42 F.3d 373, 380 (6th Cir.1994).

■ In this case, the trial court denied prejudgment interest because counsel for Thurman delayed the case by requesting extensions to respond to Yellow Freight's motion for summary judgment and requesting that trial be delayed due to his need for more time to prepare. Another delay occurred when Thurman failed to respond to an order of the court.

The trial court abused its discretion by denying prejudgment interest altogether. Accordingly, this case is hereby remanded for an award of prejudgment interest. The district court may reduce the interest award for delays specifically attributable to Thurman.

### F. Unemployment and Worker's Compensation

Thurman also appeals the district court's deduction of unemployment compensation and worker's compensation from the backpay award. Thurman received both types of compensation after he left Yellow Freight. He received the worker's compensation for a back injury he received while working at Parts, Inc.

■ In *Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984), this court held that unemployment benefits should not be deducted from backpay awards and this is not a matter for district court discretion. Title VII is intended to make victims of discrimination whole.

> It is inconsistent with this national policy to argue ... that two identically situated claimants may be made "whole" by radically different backpay awards. To allow district courts to determine just how "whole" a claimant will be is antagonistic to the establishment of a uniform national policy.

*Id.* at 627 n. 13. In addition, unemployment compensation is paid not to discharge an obligation of the employer, but to carry out the social policies of the state. Thus, unemployment benefits are collateral benefits which the district court should disregard in

making its award. *Id.* *Accord Conklin v. Lovely*, 834 F.2d 543, 551 (6th Cir.1987) (as general rule, unemployment benefits are not deducted from backpay awards); *contra Satty v. Nashville Gas Co.*, 522 F.2d 850, 855 (6th Cir.1975) (upholding without discussion reduction of discrimination award due to unemployment compensation), *vacated and remanded on other grounds*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977).[8] Like unemployment benefits, worker's compensation benefits are a collateral source that should not be deducted from backpay. *Knafel v. Pepsi–Cola Bottlers of Akron, Inc.*, 899 F.2d 1473 (6th Cir.1990).

In contrast, in *Hawley v. Dresser Industries, Inc.*, 958 F.2d 720 (6th Cir.1992), this court held that pension benefits should be deducted from a backpay award in an ADEA case. The purpose of the backpay award was to restore the employee to the position he would have been in if the discrimination had not occurred. Because the plaintiff would not have been entitled to pension benefits if he had remained employed, the pension benefits he received were deducted from the award.

■ Here, Yellow Freight argues that the unemployment compensation and worker's compensation are interim earnings paid in lieu of income after termination and not collateral sources. Further, backpay is an equitable award intended to make the plaintiff whole; failure to deduct these benefits would make Thurman more than whole. Yellow Freight argues *Knafel* is distinguishable because in that case the employer caused the employee's injury and thus the employer should not be entitled to benefit from the worker's compensation payments. In contrast, Thurman's injury was caused by a third party.

■ Thurman contends the district court should be reversed because it should have followed *Rasimas* and *Knafel.* This is the better argument. The unemployment compensation and worker's compensation Thurman received are collateral sources that should not have been deducted from backpay. The purpose of Title VII is both to make the victim of discrimination whole and to deter discrimination. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 45, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1974). Permitting an employer to benefit from other sources of income like unemployment compensation and worker's compensation would not serve the deterrence function of the statute. Further, as noted in *Rasimas*, unemployment compensation is not paid to discharge a liability of the employer. It is paid to carry out the social policies of the state. Identically situated Title VII claimants should not receive vastly different backpay awards; this would be antagonistic to the national uniform policy of making discrimination victims whole. 714 F.2d at 627 n. 7. Also, while backpay may be equitable in nature, it is ordinarily a presumptive entitlement of a plaintiff who successfully prosecutes an employment discrimination case. *Id.* at 626. Therefore, the trial court's deduction of unemployment and worker's compensation from backpay is reversed and the case is remanded for a recalculation of backpay.

### G. Instatement

■ Thurman appeals the district court's denial of his request for instatement. Victims of discrimination are presumptively entitled to instatement or reinstatement in the usual case. *Fleming v. Ayers & Assoc.*, 948 F.2d 993, 998 (6th Cir.1991). It is not appropriate in every case, however, and it is within the discretion of the district court. *Id.* When the victim of discrimination is not capable of performing the job in question, instatement is not an appropriate remedy. *Whitlock v. Donovan*, 598 F.Supp. 126, 137

---

8. The majority opinion in *Rasimas* created a conflict with a prior panel of the Sixth Circuit which ruled in *Satty v. Nashville Gas Co.*, 522 F.2d 850, 855 (6th Cir.1975), *vacated and remanded on other grounds*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977), that the district court's reduction of a discrimination award due to unemployment compensation was proper. The *Satty* court ruled on this issue without discussion. After *Rasimas*, the only other Sixth Circuit panel to address the issue ignored the conflict between *Satty* and *Rasimas* and cited *Rasimas* as settled law. *Conklin v. Lovely*, 834 F.2d 543, 551 (6th Cir.1987) (as general rule, unemployment benefits are not deducted from backpay awards). As discussed *infra*, this court finds the policy and rationale behind *Rasimas* is more persuasive.

(D.D.C.1984) (under Rehabilitation Act, court may take into account reasonableness of workplace accommodation; thus, denial of reinstatement appropriate because alcoholic employee was incapable of performing job), *aff'd sub nom. Whitlock v. Brock,* 790 F.2d 964 (D.C.Cir.1986) (Table). Courts have required employers to make reasonable accommodations for victims of discrimination, but only where the victim was injured while working for the employer. *See, e.g., Wells v. North Carolina Board of Alcoholic Control,* 714 F.2d 340, 342 (4th Cir.1983) (if employee had not been improperly denied promotion to job involving lighter work, he would not have suffered injury causing him to quit; backpay and reinstatement affirmed), *cert. denied,* 464 U.S. 1044, 104 S.Ct. 712, 79 L.Ed.2d 176 (1984). *See also Albright v. Longview Police Dept.,* 884 F.2d 835 (5th Cir.1989).

■ In this case, after Thurman left his employment at Yellow Freight he injured his back working for Parts, Inc. As a result, he is unable to do the heavy lifting his former employment at Yellow Freight required. Because he would not be capable of performing his former job, the district court denied his request for instatement. This was not an abuse of discretion.

■ On appeal, Thurman claims that the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213, requires the court to order instatement and reasonable accommodation. This issue was not raised in the pretrial order and was not litigated at trial. It was raised vaguely and for the first time in Plaintiff's motion to alter or amend the judgment. Issues that are not squarely presented to the trial court are considered waived and may not be raised on appeal. *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1399 (6th Cir.1995) ("vague references fail to clearly present the objection in the district court so as to preserve the issue for appellate review"). Thus, the trial court's denial of instatement is affirmed.

### H. Pension Benefits

Thurman also appeals the trial court's failure to award pension benefits as part of his backpay award. While Thurman's amended complaint requests pension benefits in its prayer for relief, the record does not reflect any subsequent request, and the trial court did not address this issue. Again, issues not squarely presented to the trial court are considered waived. *Grandview Raceway,* 46 F.3d at 1399. With few limited exceptions, this court will not consider issues raised for the first time on appeal. *Preferred Rx, Inc. v. American Prescription Plan,* 46 F.3d 535, 549 (6th Cir.1995). The failure to award pension benefits is affirmed.

### I. Denial of Front Pay

■ In the conclusion to his appeal brief, Thurman also appeals the denial of front pay. He failed to brief the issue, however, and therefore the court considers the claim abandoned and unreviewable. *See McMurphy v. City of Flushing,* 802 F.2d 191, 198–99 (6th Cir.1986).

### IV.

The trial court's finding of intentional discrimination and rejection of the after-acquired evidence defense is AFFIRMED. The trial court's finding that backpay should not be tolled is AFFIRMED, and the award of attorney fees and costs is AFFIRMED. Further, the court's denial of instatement, pension benefits, and front pay is AFFIRMED.

The district court's denial of prejudgment interest is REVERSED. This case is REMANDED for an award of prejudgment interest in accordance with this opinion. In addition, the deduction of unemployment and worker's compensation from backpay was in error and is REVERSED, and the case is REMANDED for recalculation of backpay.