IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On Remand from the Supreme Court of Tennessee on Opinion filed May 30, 2000

# LARRY W. BARNES v. THE GOODYEAR TIRE AND RUBBER COMPANY

**An Appeal from the Chancery Court for Obion County**
**No. 16,153     Michael Maloan, Chancellor**

---

**No. W2000-01607-COA-RM-CV - Filed May 25, 2001**

---

This is a suit for wrongful termination under the Tennessee Handicap Act, remanded to this Court by the Tennessee Supreme Court. After a jury trial, the jury found that the employer regarded the employee as handicapped and terminated his employment in violation of the Tennessee Handicap Act. The jury awarded the employee $150,000 in back pay and $150,000 for humiliation and embarrassment. The trial court suggested a remittitur, reducing the back pay award to $100,000, and reducing the award for humiliation and embarrassment to $75,000. The defendant was ordered to pay approximately $30,000 in attorney's fees and court costs. The plaintiff employee accepted the remittitur under protest, and both parties appealed. This Court reversed, holding that there was insufficient evidence to permit the jury to find that the employer regarded the plaintiff as "suffering from an impairment which substantially limited a major life activity." Based on this holding, all remaining issues were pretermitted. The Tennessee Supreme Court reversed this Court's holding, finding that there was material evidence to support the jury verdict. The Supreme Court remanded the case for resolution of the pretermitted issues. On remand, we affirm the trial court's remittitur of the award for humiliation and embarrassment, affirm the trial court's award of attorney's fees and court costs, and reverse and remand the trial court's remittitur of the back pay award.

**Tenn. R. App. P. 3; Judgment of the Chancery Court is Affirmed in Part, and Reversed in Part, and Remanded.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S. and HEWITT P. TOMLIN, JR., SP.J. joined.

Dan M. Norwood and James R. Becker, Jr., Memphis, Tennessee, for the appellant Larry W. Barnes

James M. Glasgow, Jr., Union City, Tennessee and Tim K. Garrett and Michael S. Moschel, Nashville, Tennessee, for the appellee The Goodyear Tire and Rubber Company

# OPINION

This is a wrongful termination case under the Tennessee Handicap Act, on remand to this Court from the Tennessee Supreme Court. The plaintiff/appellant Larry W. Barnes ("Barnes") was employed by the defendant/appellee The Goodyear Tire and Rubber Company ("Goodyear"). In the summer of 1989, Barnes was diagnosed as having Bell's Palsy, a condition of the nervous system that affects the facial muscles. Due to the Bell's Palsy, Barnes temporarily experienced slurred speech, paralysis of his facial muscles and right eye, and was unable to work for approximately six weeks. When Barnes returned to work, he still suffered from some paralysis in his face and right eye and had some difficulty speaking.

In August 1990, Goodyear implemented a plan for a reduction in workforce. The plan called for the reduction of Goodyear's salaried workforce by 20% over a three year period. Layoffs at Barnes' plant were based on job performance. Job performance was measured by a performance appraisal method already used by Goodyear to determine salary increases. Using this criteria, the seven lowest ranked quality assurance inspectors would be laid off. Barnes received the fifth lowest performance evaluation and was laid off in September 1990. At the time he was laid off, Barnes was employed as a Process Control ("PC") Operator; his primary duty was to assure the quality of the tires made at the facility. Barnes earned approximately $15 per hour. Barnes' layoff was designated as "recallable," making him eligible for recall for a four-year period. Goodyear offered Barnes a temporary, hourly position with its affiliate Hamilton-Ryker that paid approximately half of his previous salary and did not have medical benefits. Barnes rejected this offer.

As a laid off employee, Barnes was entitled to "subfund pay" from Goodyear. Subfund pay was a pool of money designed to provide laid off employees with an income equaling 80% of their salary. In calculating subfund pay, Goodyear considered the employee's other sources of income, including unemployment compensation and salary from a new job, and supplemented that income up to 80% of the employee's prior Goodyear salary until the employee's subfund account was exhausted. Barnes' subfund amount was $22,722. During the period of his layoff, Barnes received $160 per week in unemployment compensation for forty-one weeks. To supplement this, he received forty-two weeks of subfund pay at $541 per week. Barnes' receipt of subfund pay was not contingent on his acceptance of the Hamilton-Ryker position; however, the period of time Barnes was eligible for subfund pay was less than it would have been had he accepted the Hamilton-Ryker offer. Under the Goodyear layoff plan, Barnes also received medical benefits for one year.

After being laid off from Goodyear in 1990, Barnes filed an application with an unemployment office and applied for work at a supermarket, Wal-Mart, and K-Mart. Barnes testified that he did not obtain employment at any of these places. Instead, in July 1991, he enrolled in barber school, based on his desire to start a new career. Barnes completed the required hours and graduated from barber school. In October 1992, he began work as a barber. In July 1993, when Goodyear recalled Barnes to an hourly position paying $16.38 per hour. The pay was later raised to $16.92 per hour. In taking the recall, Barnes lost his right to be recalled to a salaried position and

was placed at the bottom of the seniority list. Barnes worked for Goodyear in this capacity until he injured his knee in 1994.

Meanwhile, in 1991, Barnes filed a lawsuit against Goodyear, alleging that his layoff violated the Tennessee Handicap Act ("THA"), Tennessee Code Annotated § 8-50-103 (1993). Barnes asserted that his employment was terminated because he was handicapped or perceived by Goodyear to be handicapped.

The case was tried before a jury in May 1996. At the conclusion of Barnes' proof, Goodyear moved for a directed verdict, arguing that Barnes had failed to demonstrate that he was "handicapped" under the THA. The motion for a directed verdict was granted in part and denied in part. A directed verdict was granted as to Goodyear's claim that the evidence did not demonstrate that Barnes suffered from a handicap. It was denied on the issue of whether Goodyear perceived Barnes as handicapped. The jury found Goodyear liable to Barnes as a result of the layoff. The jury awarded Barnes $150,000 in back pay and $150,000 for humiliation and embarrassment. The trial court upheld the jury's finding of liability, but suggested a remittitur of the back pay award to $100,000 and a remittitur of the award for humiliation and embarrassment to $75,000. The trial court also awarded Barnes $28,690 in attorney's fees and $1073.37 in court costs. Barnes accepted the remittitur under protest. Both parties appealed to this Court.

On appeal, Barnes argued that the trial court erred in reducing the jury's damage award. He also appealed the trial court's computation of the attorney's fees. Goodyear appealed the trial court's denial of its motion for a directed verdict on the issue of whether Goodyear regarded Barnes as handicapped. In the alternative, Goodyear appealed the amount of the remittitur, arguing that the amount of the judgment should have been reduced further because of Barnes' failure to mitigate damages.

This Court reversed the trial court's finding of liability, holding that the evidence was insufficient to permit the jury to find that "Goodyear regarded Barnes as suffering from an impairment that substantially limited a major life activity." *Barnes v. Goodyear*, No. 02A01-9707-CH-00157, 1998 WL 345449, at *10 (Tenn. Ct. App. June 30, 1998), *rev'd* 2000 WL 688864 (Tenn. May 30, 2000). The trial court's finding of liability was reversed; therefore, all remaining issues on appeal were pretermitted. *Id.*

The Tennessee Supreme Court granted review to determine the proper framework for analyzing a handicap discrimination claim under the THA. *Barnes v. Goodyear*, No. W1997-00247-SC-R11-CV, 2000 WL 688864, at *1 (Tenn. May 30, 2000). It held that there was material evidence to support the jury's finding of handicap discrimination, reinstated the jury's verdict, and reversed and remanded the case to this Court for consideration of the pretermitted issues. *Id.* at 9.

Therefore, on remand, the issues before this Court are whether the trial court erred in suggesting a remittitur of the jury's damage award and whether the trial court erred in its computation of the attorney's fee award.

An adjustment of a jury's award of damages is proper only when the court disagrees with the amount of the verdict and the adjustment does not "totally destroy" the jury's verdict. *Long v. Mattingly*, 797 S.W.2d 889, 896 (Tenn. Ct. App. 1990). In reviewing a trial court's adjustment of a jury's damage award, an appellate court must determine whether the adjustment was justified, "giving due credit to the jury's decision regarding the credibility of the witnesses and due deference to the trial court's prerogatives as thirteenth juror." *Id.* (citing *Burlison v. Rose*, 701 S.W.2d 609, 611 (Tenn. 1985); *Bates v. Jackson*, 639 S.W.2d 925, 926-27 (Tenn. 1982); *Foster v. Amcon Int'l Inc.*, 621 S.W.2d 142, 145 (Tenn. 1981)). The appellate court must examine the reasons for the trial court's action and the amount of the suggested adjustment, and must also review the proof of damages to determine whether the evidence preponderates against the trial court's adjustment. *Long*, 797 S.W.2d at 896 (citations omitted).

We first address the trial court's remittitur of the back pay award. The trial court found that the amount of the jury's back pay award was excessive and suggested a remittitur from $150,000 to $100,000. Barnes argues that there was no basis for the trial court's reduction of the jury's damage award; he maintains that the overwhelming weight of the evidence supported the jury's calculation of damages. Barnes contends that the trial court's reduction of the award has the effect of destroying the jury's verdict by denying him relief to which he is entitled and permitting Goodyear to reap the benefit of its discriminatory actions. Goodyear, on the other hand, asserts not only that the remittitur was warranted, but also that the trial court should have reduced the amount of back pay further, because Barnes failed to mitigate his damages. Moreover, Goodyear asserts that the back pay should be further reduced by the amount of unemployment compensation and subfund pay Barnes received, to prevent Barnes from obtaining a windfall.

Back pay is an equitable remedy awarded in cases of employment discrimination to "make persons whole for injuries suffered on account of unlawful discrimination." *Albemarle Paper Co. v. Moody*. 422 U.S.405, 418, 95 S. Ct. 2362, 2372 (1975). The goal of a back pay award is to completely redress the economic injury suffered by the plaintiff as a result of the discrimination. Consequently, a back pay award includes an employee's base salary plus any raises that the employee could reasonably have expected to receive, sick leave, vacation pay, pension benefits, and other fringe benefits. *See Rasimas v. Michigan Dep't. of Mental Health*, 714 F.2d 614, 626-27 (6th Cir. 1983), *cert. denied*, 466 U.S. 950, 104 S. Ct. 2151, 802 L. Ed. 2d 537 (1984) (citations omitted); *Equal Employment Opportunity Commission v. Financial Assurance, Inc.*, 624 F. Supp. 686, 693 (W.D. Mo. 1985). Any ambiguity as to the amount the employee would have received but for the discrimination should be resolved against the discriminating employer. *Rasimas*, 714 F.2d at 628. However, when salary increases or bonuses are optional depending on an employee's work performance, or where there has been no consistent pattern to an employer's award of salary increases or bonuses, including such benefits in an award of back pay would be purely speculative and inappropriate. *See Holthaus v. Compton & Sons, Inc.*, 71 F.R.D. 18, 19 (E.D. Mo. 1975); *Bonura v. Chase Manhattan Bank, N.A.*, 629 F. Supp 353, 357, 361(S.D.N.Y. 1986).

In this case, the record shows that Goodyear awarded raises based on performance, placing employees into 5 groups - employees with the highest performance ratings falling into Groups 1

and 2 and those with lowest ratings falling into Groups 4 and 5. Raises generally ranged from 3% to 7% and were distributed based on the availability of funds from Goodyear's corporate office. Employees with the best performance reviews received bigger raises at more frequent intervals. For example, an employee in Group 1 may receive a 7% raise in 12 months, while an employee in Group 3 may receive only a 3-4% raise in 17-24 months. At trial, Goodyear's Manager of Human Resources testified that, due to inflation, the pool of money from which Goodyear drew its merit raises had consistently diminished, affecting the consistency and certainty of receiving a raise.

In the two years prior to Barnes' layoff from Goodyear, he received two raises, a 4% raise in 1989 and a 3.49% raise seventeen months later. Based on this prior history, Barnes added approximately $9700 to his calculation of lost salary, to include projected salary increases of 5% each year. The jury apparently credited Barnes' inclusion of the projected raises in its award of back pay. The trial court, however, acting as thirteenth juror, suggested a remittitur that would take away the amount of the projected raises.

Whether the projected 5% raises should be included in calculating Barnes' back pay is a legal issue to be determined by the court. *Moody*, 422 U.S. at 415-416, 420-21, & n. 9 (asserting that courts have discretion in fashioning back pay awards). The evidence in the record to be considered includes the following facts: that Barnes had previously received two raises between 3% and 4% at 17-month intervals; that Barnes' last performance review placed him in Group 3; the fact that the amount, frequency and receipt of future salary increases were contingent on Barnes' performance appraisal and the availability of funds; that the pool of money from which Goodyear paid its raises had diminished; and the economic conditions which lead to the reduction in force. Under these circumstances, Barnes' assertion that, had he stayed, he would have received a 5% yearly salary increase, must be deemed "speculative hindsight." *See Bonurn*, 629 F.Supp. at 361. We conclude that the trial court did not err in suggesting a remittitur that decreased the back pay award by the amount of the projected raises.

A back pay award must also be reduced by any interim earnings of the employee or amounts that could have been earned had the employee exercised reasonable diligence. 42 U.S.C.S. § 2000e-5(g) (Supp. 1996); *see Frye v. Memphis State University*, 806 S.W.2d 170, 173 (Tenn. 1991). The employee has a duty to mitigate damages by exercising reasonable diligence in seeking similar or comparable employment. *Frye*, 806 S.W.2d at 173. In attempting to mitigate damages, an employee is not required to accept any offer of employment or go to "heroic lengths," but only to take reasonable steps in light of the individual characteristics of the market and the employee. *See Id.* (quoting *Ford v. Nicks*, 866 F.2d 865, 873 (6th Cir. 1989)); *Rasimas*, 714 F.2d at 624. An employee forfeits his right to back pay "if he refuses a job substantially equivalent to the one he was denied." *Ford Motor Co. v. Equal Employment Opportunity Commission*, 458 U.S. 219, 231-32, 102 S. Ct. 3057, 3065-66 (1982). The employer has the burden of proving both the availability of suitable and comparable employment and the lack of reasonable diligence by the employee. *Frye*, 806 S.W.2d at 173 (citing *Rasimas*, 714 F.2d at 624).

Goodyear contends that the award of back pay should be eliminated based on Barnes' rejection of the Hamilton-Ryker offer. In order for the Hamilton-Ryker position to be deemed substantially equivalent, it must be virtually identical in terms of compensation, promotional opportunities, working conditions, responsibility and status. *Rasimas*, 714 F.2d at 624. In contrast to the salaried position with benefits Barnes held at Goodyear, the Hamilton-Ryker position was a temporary hourly position which paid approximately half of his previous salary at Goodyear and which provided no benefits. Even including the subfund pay, the maximum amount Barnes would have received had he taken the Hamilton-Ryker position was 80% of his previous salary. "[An] employee is not required to mitigate damages by accepting a position that is not comparable or is, in effect, a demotion." *Frye*, 806 S.W.2d at 173. (citing *Ford Motor Co.*, 458 U.S. at 231, 102 S. Ct. at 3065). The Hamilton-Ryker position cannot be considered substantially equivalent to Barnes' prior position. Consequently, by rejecting the Hamilton-Ryker offer, Barnes did not forfeit his right to back pay.

In the alternative, Goodyear argues that the back pay award should exclude the period of time after Barnes entered barber school, because Barnes failed to take reasonable steps to find comparable employment and voluntarily removed himself from the job market. Goodyear notes that Barnes' only efforts to find comparable employment during the three-year period after his layoff were to apply at a local supermarket, Wal-Mart, and K-Mart and to file an application with the unemployment agency. Barnes counters that Goodyear failed to establish that there was comparable employment available which he could have found by an exercise of reasonable diligence.[1]

Generally, to reduce an award of back pay, any employer must prove the availability of suitable and comparable employment and the lack of reasonable diligence by the employee to seek such employment. *Frye*, 806 S.W.2d at 173(citing *Rasimas*, 714 F.2d at 624. In this case, Goodyear's proof regarding the availability of suitable and comparable employment was limited to proof regarding the Hamilton- Ryker position, which we find was not substantially equivalent to Barnes' previous position. It is undisputed that Barnes' efforts toward finding other employment were limited to filing an application with an employment agency and applying at a local supermarket, Wal-Mart and K-Mart. Barnes did not accept any other positions because he had decided to start a new career as a barber. A discharged employee's decision to attend school is not inherently inconsistent with his duty to mitigate damages, especially when such employee chooses to attend school after diligent efforts to find work have proven futile. *See Dailey v. Societe Generale*, 108

---

[1]Barnes also argues that the fact he received unemployment compensation throughout the course of his unemployment shows that he was making reasonable efforts to secure work. He asserts that it is significant because a claimant is entitled to unemployment benefits only if the claimant is "able to work, available for work, and making a reasonable effort to secure work." Tenn. Code Ann. § 50-7-302(a)(4). However, the Tennessee Employment Security Law states that "no findings of fact or law, judgment, conclusion, or final order made with respect to a claim for unemployment compensation under this chapter may be conclusive in any separate or subsequent action or proceeding in another forum. . . ." Tenn. Code Ann. § 50-7-304(k). Therefore, Barnes' receipt of unemployment benefits does not establish whether he adequately mitigated his damages.

F.3d 451, 457 (2d Cir. 1997). However, when an employee voluntarily removes himself from the job market in order to attend school without first exercising reasonable diligence to find comparable employment, he has failed to adequately mitigate his damages. *See Miller v. Marsh*, 766 F.2d 490, 492 (11th Cir. 1985); *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 267-68 (10th Cir. 1975).

Tennessee courts have adopted a limited exception to the employee's obligation to seek other employment. In *Frye v. Memphis State University*, a university professor was terminated for improper and fraudulent use of the University computer. The plaintiff professor took no steps to secure comparable employment, and the Tennessee Supreme Court considered whether he had failed to mitigate his damages by failing to exercise reasonable diligence in seeking other employment. The professor put on proof that efforts to seek employment at other institutions of higher education would have been futile. The Court found that, under the unique circumstances of that case, the plaintiff professor's "decision not to pursue employment opportunities was a reasonable one." *Frye*, 806 S.W.2d at 174.

The *Frye* exception would not be applicable in this case. There has been no showing by Barnes that his situation was comparable to Frye, in which "the employee was a tenured professor, a highly protected employment status under the law, whose speciality was such that his professional reputation was perhaps his most valued asset." *Frye*, 806 S.W.2d at 173-74. There is no proof in this record it would have been "exceedingly difficult, if not impossible, for the Plaintiff to locate a job commensurate with his training and within his professional capacity." *Id.* at 174.

Some courts have carved out another exception to the general rule, holding that an employer is released from the duty to prove the availability of substantially equivalent employment if the employer proves that an employee has not made any reasonable efforts to obtain such work. *See, e.g., Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998), *Tubari Ltd. v. National Labor Relations Board*, 959 F.2d 451, 458 (3rd Cir. 1992); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991) (superseded by statute on other grounds); *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990), *cert. denied by*, 498 U.S. 987, 111 S.Ct. 525 (1990); *Hipp v. Liberty Nat. Life Ins. Co.*, 65 F. Supp.2d 1314, 1337-39 (M.D. Fla. 1999); *Harrison v. Indosuez*, 6 F. Supp.2d 224, 235 (S.D.N.Y. 1998); *Logan v. Pena*, No. 91-2389 JWL, 1993 WL 62316, at *4 (D. Kan. Feb. 9, 1993). This exception is based on the rationale that an employer should not be assigned the burden of showing that other substantially similar employment existed when the employee has failed to pursue any employment at all. *Greenway*, 143 F.3d at 54. This exception has not been addressed in Tennessee.

We considered adopting this exception in this case, where Barnes' efforts at finding comparable employment can best be described as perfunctory. However, most of the cases adopting this exception involve employees who made virtually no effort to find comparable employment. In this case, Barnes made some effort, although it was minimal at best. The employee's burden to mitigate damages is not onerous and does not require him to be successful in mitigation, only to exercise reasonable efforts in light of the individual characteristics of the market and the employee. *See Frye*, 806 S.W.2d at 173(quoting *Ford*, 866 F.2d at 873); *Rasimas*, 714. F.2d at 624.

Consequently, we decline to adopt this exception in this case. As a result, the burden remains on the employer to prove that the employee failed to use reasonable efforts to mitigate his damages. As stated in *Frye v. Memphis State University*, the employer's burden consists of two parts: proving the availability of suitable and comparable employment and proving a lack of reasonable diligence by the employee. *Frye*, 806 S.W.2d at 173. The only proof Goodyear produced regarding comparable employment available to Barnes was the Hamilton-Ryker position , a job not comparable to Barnes' prior position. Therefore, Goodyear failed to prove the availability of suitable and comparable employment, as required to satisfy its burden of proof. Under these circumstances, we find that Goodyear failed to satisfy its burden of proof that Barnes did not use reasonable efforts to mitigate his damages. Therefore, the period after 1991, when Barnes enrolled in barber school, should be included in the award of back pay.

Goodyear also argues that the back pay award should be reduced by the amount of unemployment compensation and subfund pay Barnes received. In *NLRB v. Gullett Gin, Co.*, 340 U.S. 361, 71 S. Ct. 337, 95 L.Ed. 337 (1951), the Supreme Court addressed whether unemployment compensation paid by a state agency to employees discriminatorily discharged because of their union affiliation must be deducted from an award of back pay. The Court held that the NLRB did not abuse its discretion by refusing to deduct the unemployment compensation from the award of back pay. *Id.* at 364, 71 S. Ct. at 339. The Court concluded that the NLRB's decision not to deduct the unemployment compensation effectuated the remedial purposes of National Labor Relations Act, and did not result in double recovery for employees:

> To decline to deduct state unemployment compensation benefits in computing back pay is not to make the employees more than whole . . . Since no consideration has been given or should be given to collateral *losses* in framing an order to reimbuse [sic] employees for their lost earnings, manifestly no consideration need be given to collateral benefits which employees may have received.

*Id.* Unemployment compensation is paid to further the social policies of the State rather than to discharge an obligation or liability of the employer; consequently, it is deemed a collateral benefit which should not be given consideration in formulating an award of back pay. *Id.*

Courts applying the reasoning in *Gullett Gin* to other employment discrimination cases have disagreed on whether collateral benefits, particularly unemployment compensation, should never be deducted from back pay awards or whether the decision to deduct such benefits is within the discretion of the trial court. *See Lussier v. Runyon*, 50 F.3d 1103 (1st Cir. 1995) (denoting a 4 to 3 split among seven of the circuits and internal division among the other three circuits). A majority have held that collateral benefits are generally nondeductible and that unemployment compensation, in particular, should never be deducted. *See Thurman v. Yellow Freight Systems, Inc.,* 90 F.3d 1160 (6th Cir. 1996); *Gaworski v. ITT Commercial Fin. Corp.,* 17 F.3d 1104, 1114 (8th Cir. 1994); *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 82-84 (3d Cir. 1983); *Brown v. A.J. Gerrard Mfg. Co.*, 715 F.2d 1549, 1550-51 (11th Cir. 1983); *Rasimas*, 714 F.2d at 627 n.13; *Kauffman v. Sidereal Corp.*, 695 F.2d 343, 346, 347 (9th Cir. 1982); *Equal Employment Opportunity Commission v. Ford*

***Motor Co.***, 645 183, 195 (4th Cir. 1981). In contrast, a minority have held that the deductibility of collateral benefits is within the discretion of the trial court, reasoning that the ***Gullett Gin*** Court upheld the NLRB's refusal to deduct unemployment compensation benefits as a valid exercise of the NLRB's discretion. Thus, by analogy, the decision by a trial court rather than the NLRB would also be in the discretion of the trial court in deciding an employment discrimination case. ***See, e.g., Dailey***, 108 F.3d at 451; ***Daniel v. Loveridge***, 32 F.3d 1472, 1478 n. 4 (10th Cir. 1994); ***Hawley v. Dresser Indus., Inc.,*** 958 F.2d 720, 726 (6th Cir. 1992); ***Orzel v. City of Wauwatosa Fire Dep't.***, 697 F.2d 743, 756 (7th Cir. 1982), *cert. denied*, 464 U.S. 992, 104 S. Ct. 484 (1983); ***Merriweather v. Hercules***, 631 F.2d 1161, 1168 (5th Cir 1980).

We find persuasive the reasoning of the minority view, holding that the decision of whether to deduct unemployment compensation from back pay is within the discretion of the trial court. However, having held this, we caution that, more often than not, such benefits should not be deducted. The purpose of back pay is both to make the victim of discrimination whole and to deter discrimination by the employer. ***Thurman***, 90 F.3d at 1171 (citing ***Alexander v. Gardner-Denver Co.***, 415 U.S. 36, 45, 94 S. Ct. 1101, 1018 (1974)). To allow a discriminating employer to offset its liability by deducting unemployment compensation paid by a state agency undermines the deterrence objective of back pay. In effect, a benefit is conferred upon the employer who committed the illegal discrimination, thus making such discrimination less costly. ***See Thurman***, 90 F.3d at 1171; ***Gaworski***, 17 F.3d 1113. In choosing between conferring a windfall upon the wrongdoer and the victim of the wrongdoing, the logical choice is the victim. ***See Dailey***, 108 F.3d at 461 (citing ***Hunter v. Allis-Chalmers, Corp.***, 797 F.2d at 1417, 1429 (7th Cir. 1986), *abrogated on other grounds by* ***Patterson v. McLean Credit Union***, 109 S.Ct. 2363 (1989)). Furthermore, the Court in ***Gullett Gin*** expressly stated that declining to deduct unemployment compensation benefits in computing back pay does not make an employee more than whole. 340 U.S. at 364-65, 71 S. Ct. at 339-40.[2] In this case, we find no circumstances which would warrant the deduction of unemployment compensation benefits from the back pay award to Barnes. Consequently, we hold that the back pay award should not be reduced by the amount of the unemployment compensation benefits Barnes received.

In contrast, the subfund pay Barnes received was funded entirely from Goodyear. As such, it is not a collateral benefit, but a direct benefit from the employer. Therefore, the collateral source rule does not apply. The purpose of the subfund pay was to provide Barnes with income during the

---

[2]Some courts argue that the issue of whether unemployment compensation amounts to double recovery is not between the employer and employee. They argue that if Congress did not intend for employees to receive unemployment compensation in addition to back pay, recoupment of the benefits by the state employment agency would be the logical solution. ***See Rasimas***, 714 F.2d at 628, n.13; ***Hunter***, 797 F.2d at 1429. ***Gullett Gin*** also seems to suggest that due to the collateral nature of unemployment compensation, the issue is between the state and the employee. ***Gullet Gin***, 340 U.S. at 365, n. 1, 71 S. Ct. 340, n. 1. In ***Griggs v. Sands***, 526 S.W.2d 441 (Tenn. 1975), the Tennessee Supreme Court held that the recoupment of unemployment compensation made during a period covered by a back pay award may be appropriate in some cases. ***Id.*** at 449.

period he was laid off. Arguably, it was paid in lieu of the salary Barnes would have received had he not been discharged. Thus, to allow Barnes to receive both subfund pay and back pay would provide double recovery from Goodyear for the same period of time. In essence, the employer would be paying twice, first in the form of subfund pay and then in the form of back pay, and the result would be to make the plaintiff more than whole. Therefore, the amount of back pay awarded to Barnes should be reduced by the amount of subfund pay he received.

In its suggested remittitur, the trial court reduced the jury's award of back pay from $150,000 to $100,000, finding the jury's award excessive. However, the trial court did not state the elements comprising its suggested remittitur. Therefore, we remand this cause to the trial court for recalculation of the proper amount of back pay owed to Barnes in light of this Opinion. In calculating the award of back pay, the trial court should include the period after 1991, when Barnes entered barber school. Excluded from the back pay award should be the amount Barnes earned in subfund pay and the amount Barnes projected in raises. The back pay award should not be reduced by the amount of unemployment compensation Barnes recovered.

In addition to suggesting a remittitur of the back pay award, the trial court suggested a remittitur of the jury's award for humiliation and embarrassment. Finding the award excessive, the trial court suggested a remittitur which reduced the award by half, from $150,000 to $75,000. The THA provides that a plaintiff in a discrimination lawsuit may be awarded damages for humiliation and embarrassment caused by the discriminatory act. Tenn. Code Ann. § 4-21-306(a)(7). The amount of such damages is primarily within the ambit of the jury, and is largely dependent on the jury's perception of the personal shame articulated by the discharged employee. *McDowell v. Shoffner Indus.*, No. 03A01-9301-CH00030, 1993 WL 262846 at *4 (Tenn. Ct. App. July 13, 1993), *perm. to appeal denied*, Aug. 12, 1993. Ultimately, however, the amount awarded is subject to the rule of reasonableness. *Id.*

In this case, Barnes testified that he was devastated and in a state of shock upon learning of his layoff, that he was just not himself, and that he felt "so low" he did not want to talk to or see anyone. This testimony indicates an overall disappointment and discomfort normally associated with losing a job. We agree with the trial court that $150,000 for this type of injury, in the absence of any aggravating injuries or circumstances resulting from the layoff, is excessive. *See Campbell v. Rust Eng'g Co.*, No. 90-5679, 1991 WL 27423, at *13 - *15 (6th Cir. Mar. 5, 1991), *cert. denied*, 502 U.S. 952, 112 S. Ct. 406 (1991) (mem.) (suggesting remittitur for humiliation and embarrassment damages from $68,897 to $10,000 because plaintiff suffered no aggravating injuries as a result of his layoff, only injuries normally sustained when a losing job, i.e. overall disappointment about not being employed); *Harris v. Dominion Bank*, No. 01-A-01-9609-CH-00444, 1997 WL 273953, at *10 (Tenn. Ct. App. May 23, 1997) (remitting humiliation and embarrassment damages form $100,000 to $20,000 because plaintiff did not suffer any aggravated injuries, only the discomfort anyone would feel over losing their job). The trial court's reduction of the humiliation and damages award to $75,000 was in the range of reasonableness. Consequently, the trial court's suggested remittitur of the award for humiliation and embarrassment from $150,000 to $75,000 is affirmed.

Finally, Barnes contends that the trial court erred in its computation of attorney's fees by declining to use the "lodestar" approach applied by the federal courts in making fee awards. However, our Supreme Court, in *United Medical Corp. v. Hohenwald Bank*, 703 S.W.2d 133, 137 (Tenn. 1986), expressly rejected the "lodestar" approach. *Id.* ("We see no advantage to [the "lodestar" approach] over the consideration of several factors set out in [Tenn. Sup. Ct. R. 8, Code of Professional Responsibility] Disciplinary Rule 2-106(B) . . . .") The determination of the amount of reasonable attorney's fees is a discretionary inquiry with no fixed mathematical rule; consequently, the trial court's award of attorney's fees should be affirmed on appeal absent an abuse of discretion. *Lowe v. Johnson County*, No. 03A01-9309-CH-00321, 1995 WL 306166, at * 2 (Tenn. Ct. App. May 19, 1995) (citations omitted). Based on our review of the record, we find no error in the amount of attorney's fees awarded by the trial court. Therefore, the decision of the trial court is affirmed on this issue.

In sum, we find that the trial court's suggested remittitur of the jury's award for humiliation and embarrassment to $75,000 was appropriate. We also find that the trial court's award of attorney's fees was proper. We remand the case to the trial court for recalculation of the appropriate back pay award to Barnes consistent with this Opinion.

The decision of the trial court is affirmed in part, reversed in part and remanded consistent with this Opinion. Costs are taxed equally to the appellant Larry W. Barnes and the appellee The Goodyear Tire and Rubber Company and their sureties, for which execution may issue if necessary.

_____
HOLLY KIRBY LILLARD, J.