# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
February 14, 2002 Session

## KAREN MOUNTJOY v. CITY OF CHATTANOOGA

**Appeal from the Chancery Court for Hamilton County**
No. 99-0132     Howell N. Peoples, Chancellor

**FILED APRIL 23, 2002**

**No. E2001-02017-COA-R3-CV**

In this case the Defendant/Appellant, the City of Chattanooga, contends that there is insufficient evidence to support the jury's verdict that it retaliated against the Plaintiff/Appellee, Karen Mountjoy, for filing a complaint of sexual harassment, that the amount of the jury's verdict was excessive or speculative and that the Trial Court abused its discretion in its award of attorney fees and discretionary costs. We affirm the judgment of the Trial Court and remand for collection of costs below.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., joined. D. MICHAEL SWINEY, J., filed a dissenting opinion.

Kenneth O. Fritz, Michael Alan McMahan and Randall Lee Nelson, Chattanooga, Tennessee, for the Defendant/Appellant, the City of Chattanooga

Gregory Brent Burks and James R. Kennamer, Chattanooga, Tennessee, for the Plaintiff/Appellee, Karen Mountjoy

## OPINION

This appeal arises out of an action filed by the Plaintiff/Appellee, Karen Mountjoy, against the Defendant/Appellant, City of Chattanooga, for damages resulting from alleged violations of the Tennessee Human Rights Act as set out in T.C.A. 4-21-101, *et seq.*

Ms. Mountjoy was initially employed by the City of Chattanooga (hereinafter "the City") in 1990 at the Moccasin Bend Wastewater Treatment Plant. In 1991 she was promoted to the position of laboratory technician at that facility.

From the beginning of her employment at the wastewater treatment plant until April of 1998, John Henderson was Ms. Mountjoy's supervisor. On April 2, 1998, Ms. Mountjoy filed a verbal complaint with the City's personnel department alleging that she was being sexually harassed by Mr. Henderson. After filing her complaint, Ms. Mountjoy expressed her reluctance to continue working in her position at the wastewater treatment plant so the City temporarily transferred her to a clerk position with the brush and trash department for the period of the City's investigation of the charges against Mr. Henderson.

As a result of its investigation, the City found that Mr. Henderson had touched both male and female employees by poking them and pulling up on their belt loops; however, the City's public works administrator determined that this conduct did not constitute sexual harassment. The City then issued Mr. Henderson a reprimand and instructed him to cease touching employees and co-workers other than by shaking their hands.

Subsequent to the conclusion of it's investigation, the City gave Ms. Mountjoy an ultimatum of three choices. She could return to her position as lab technician under the supervision of Mr. Henderson, she could accept a demotion to the position of lower pay grade as clerk in the brush and trash department or she could quit. At trial, Ms. Mountjoy testified that she was afraid to return to her former position because she anticipated repercussions from Mr. Henderson, who would be conducting her performance evaluations, and that she was also apprehensive that the conduct that she had complained of would continue. After considering the matter for approximately forty five days, on June 12, 1998, Ms. Mountjoy sent a memorandum to Jack Marcellis, the City's public works administrator informing him of her decision to accept the clerk position in the brush and trash department. The memorandum sets forth its subject as "Concerning my demotion by involuntary move".

On February 5, 1999, Ms. Mountjoy filed a complaint in the Chancery Court for Hamilton County in which she asserted a cause of action against the City for sexual harassment in violation of T.C.A. 4-21-401(a)(1) based upon the alleged behavior of Mr. Henderson. Ms. Mountjoy further asserted a cause of action against the City for retaliation in violation of T.C.A. 4-21-301 based upon her averment that the City had forced her to accept the position with the brush and trash department because of her complaint of sexual harassment against Mr. Henderson.

The case was tried before a jury which returned a verdict in favor of the City on the charge of sexual harassment and in favor of Ms. Mountjoy on the charge that the City retaliated against her for filing the complaint of sexual harassment against Mr. Henderson. The jury further awarded Ms. Mountjoy a judgment in the amount of $61,179.00 for economic loss. Upon Ms. Mountjoy's subsequent motion to assess attorney's fees and costs, the Court also ordered the City to pay Ms. Mountjoy $18,612.00 as her reasonable attorney fees and $2,957.65 as discretionary costs.

The City filed several post-trial motions-a motion to enter a judgment notwithstanding the jury's verdict or alternatively for a new trial on liability or alternatively for a new trial on damages, a motion to grant a new trial "because the verdict is contrary to the weight of the evidence", a motion

to grant a new trial "because the jury was inadequately instructed with regard to 'front pay' and the plaintiff's duty to mitigate" and a motion to alter or amend the judgment by granting a remittitur. The Court denied each of these motions and, thereafter, the City filed its notice of appeal.

We address three issues which are restated as follows:

1. Was there material evidence to support the jury's verdict that the City retaliated against Ms. Mountjoy for filing a complaint for sexual harassment against her supervisor?

2. Was the jury's verdict excessive or speculative?

3. Did the Trial Court abuse its discretion by awarding Ms. Mountjoy excessive attorney fees and discretionary costs?

We first address the issue of whether there is material evidence in the record to support the jury's verdict that the City retaliated against Ms. Mountjoy because she filed a complaint of sexual harassment against her supervisor.

It is well settled that appellate courts do not weigh evidence or assess the credibility of witnesses when there is an appeal of a jury verdict which has been approved by the trial court. In such appeals our review is limited to determining whether there is material evidence to support the verdict. *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822 (Tenn. 1994) and Tenn. R. App. P. 13(d). If the record contains material evidence which supports the jury's verdict, the judgment based on that verdict will be affirmed on appeal. *Reynolds, supra.*

The Tennessee Human Rights Act (THRA) is embodied at T.C.A. 4-21-101, *et seq.* and Ms. Mountjoy's verbal complaint of sexual harassment which she filed on April 2, 1998, was an assertion of her right to be free of discriminatory employer practices as provided by T.C.A. 4-21-401 of the Act. T.C.A. 4-21-301(1) makes it unlawful for an employer to retaliate against an employee who has filed a complaint under the THRA.

Tennessee law provides that in order to sustain a claim for retaliatory discharge under the THRA a plaintiff must prove the following four elements as reiterated in *Austin v. Shelby County Government*, 3 S.W.3d 474, 480 (Tenn. Ct. App. 1999):

> (1) that the plaintiff engaged in an activity protected by the statute; (2) that the defendant had knowledge of the plaintiff's exercise of protected activity; (3) that the defendant thereafter took an employment action adverse to the plaintiff; and (4) that a causal connection existed between the protected activity and the adverse employment action.

It is undisputed that the first two of these four elements are present under the facts in this case However, the City argues that Ms. Mountjoy has failed to show that it took an employment action

adverse to Ms. Mountjoy or that there was a causal connection between any alleged adverse action by the City and the filing of a complaint for sexual harassment by Ms. Mountjoy. The City further argues that Ms. Mountjoy has failed to show that the City's non-discriminatory reason for her transfer - that the transfer was done at Ms. Mountjoy's own request - was pretextual.

Eugene Wright, the City's director of waste resources, admitted in his trial testimony that the position of clerk with the brush and trash department to which Ms. Mountjoy was transferred is a job with a lower pay grade than her former position as lab technician at the wastewater treatment plant, that her pay scale would probably top out at a lower rate than it would have in her former position and that her pension pay-out would be less than in her former position. All of this testimony constitutes material evidence that the transfer of Ms. Mountjoy from her job as lab technician at the wastewater treatment plant to the clerk position with the brush and trash department was an adverse action.

In addition, Ernie Myer, the City's personnel investigator, testified as follows when questioned about Ms. Mountjoy's job transfer:

Q. You are aware that she was required to accept an involuntary demotion, aren't you, Mr. Meyer?

A. Yes.

Q. What would you call an involuntary demotion that results directly from the investigation, regardless of the results of the investigation? It resulted from this investigation, didn't it, Mr. Meyer? Her change in job resulted from the investigation, in other words?

A. In part, I would say it was a result of her original complaint whether it was investigated or not.

We find that this testimony alone constitutes material evidence from which the jury could have concluded that the City took an adverse employment action against Ms. Mountjoy, that there was a causal connection between that action by the City and Ms. Mountjoy's having engaged in the protected activity of filing her complaint of sexual harassment and that the City's asserted non-discriminatory reason for its action was a pretext. Accordingly, it is our conclusion that the jury's verdict that the City retaliated against Ms. Mountjoy for filing a complaint for sexual harassment is supported by material evidence and we decline to set aside that verdict.

The next issue we address is whether the jury's award to Ms. Mountjoy of damages in the amount of $61,179.00 for economic loss is excessive or speculative. The City contends that such award is excessive and speculative and, therefore, requests a new trial on damages or, alternatively, that this Court suggest a remittitur.

The Trial Court found that the jury's award of damages was proper under the proof in this case and denied the City's motion for remittitur as well as its motion for a new trial on damages. When a trial court has approved a jury's award of damages, the scope of this Court's review is also subject to the rule that if there is any material evidence to support the award it should not be disturbed. *Benson v. Tennessee Valley Electric Cooperative*, 868 S.W.2d 630 (Tenn. Ct. App. 1993).

In contending that the jury's verdict was excessive, the City first submits that Ms. Mountjoy failed to mitigate her damages. In its instructions to the jury the Trial Court correctly stated that the City had the burden of establishing that Ms. Mountjoy's failed to use reasonable diligence in mitigating damages and that suitable and comparable substitute employment was available to her. See *Frye v. Memphis State University*, 806 S.W.2d 170 (Tenn. 1991). In support of this argument the City references the testimony of its personnel director, Donna Kelly, wherein she stated that the City had posted over 500 job vacancies since July of 1998 and that Ms. Mountjoy might have been able to apply for approximately two hundred of these. The City further notes Ms. Kelly's testimony that some of these were laboratory positions. Ms. Kelly's testimony:

> A.  As I was looking through them, there were eight or ten that were laboratory-type positions that would not be in the waste water treatment plant, but might be in other areas, other water quality divisions.
> Actually, one of them is downtown, and also the air pollution control, eight or ten in that area. And then in the administrative support area, which is clerical support, there were a couple of hundred.

The City notes Ms. Kelly's testimony that Ms. Mountjoy had applied for only one of the posted positions - that of fingerprint technician- but that she was untrained for that job. Finally the City notes that Ms. Mountjoy has not sought any employment other than that offered by the City.

As noted, the City has the burden of proving that suitable and comparable employment was available to Ms. Mountjoy. Our review of the record does not indicate that the City met its burden by showing that any of the positions posted by the City referred to by Ms. Kelly in her testimony were comparable to Ms. Mounjoy's former position at the wastewater treatment plant. We do not find that the mere fact that there were "laboratory-type" positions available shows that these positions were comparable in any meaningful sense. There being no proof in the record regarding comparability between Ms. Mountjoy's former job and either the posted positions or any positions outside City employment as to compensation, working conditions, promotional opportunities and other matters of that nature, it is our determination that the City failed to meet its burden of showing that Ms. Mountjoy failed to mitigate her damages in this case. We further note Ms. Mountjoy's testimony when asked if any of the job vacancies posted by the City were in an area she felt that she was competent to apply for.

> A.  No, not qualified.  There are minimum and maximum qualifications for applying.

-5-

Q. Yes, ma'am, I understand that. Many of those jobs, unquestionably, you wouldn't be qualified; right?

A. Correct. I've been in a skilled-level position most of my life, so my expertise is only in the field I've been in. It limits me.

This testimony from Ms. Mountjoy constitutes material evidence from which the jury could have reasonably concluded that she was not qualified for any of the job vacancies posted and that her failure to apply for any of those jobs did not constitute a failure to mitigate. In determining whether reasonable diligence was used to mitigate damages "the individual characteristics of the claimant and the job market must be considered". *Frye*, supra.

Accordingly, we find that there was material evidence presented to the jury from which it could have concluded that Ms. Mountjoy did not fail to mitigate her damages.

The City also maintains that the jury's award of damages was excessive within the context of those four factors identified by this state's Supreme Court to limit the inherent speculativeness of front pay awards, the purpose of which is to compensate a plaintiff for earnings he or she would have realized but for the defendant's discriminatory act. Those factors are set forth in the case of *Coffey v. Fayette Tubular Product*, 929 S.W.2d 326 (Tenn. 1996) at page 332.

(1) the employee's future in his or her old job [meaning an estimation of what the employee could have earned in the old job if the discharge had not taken place]; (2) the employee's work and life expectancy; (3) the employee's obligation to mitigate his or her damages; (4) the availability of comparable employment opportunities and the time reasonably required to find another job; and (5) the amount of any award for liquidated or punitive damages. (emphasis omitted)

We have already dealt with the third of these factors and the City concedes that the fifth factor is not relevant in this case.

As to the first factor set forth in *Coffey* - the employee's future in his or her old job - the City asserts that Ms. Mountjoy's "future was not secure in her job as a laboratory technician because of deficiencies in her performance". Although the deposition testimony of Mr. Henderson introduced at trial reveals that in March of 1998 he advised Ms. Mountjoy that she needed to improve her work performance he further testified that he had not planned to fire her nor had he considered firing her at any other time between 1990 when she began her employment under his supervision and 1998 when she was transferred. This testimony of Mr. Henderson to the effect that he had not at any time considered firing Ms. Mountjoy constitutes material evidence which supports a finding that Ms. Mountjoy's future in her old job was secure and, therefore, an estimation of damages based upon what she could have earned in that job was reasonable.

Ms. Mountjoy presented the expert testimony of Dr. Bruce Hutchinson, an economics professor with the University of Tennessee, with respect to the second factor - Ms. Mountjoy's work and life expectancy. Dr. Hutchinson testified specifically as to both Ms. Mountjoy's work and life expectancy and explained how he arrived at his conclusions. Dr. Hutchinson further stated his opinion as to the specific dollar amount of economic loss, consisting of both front pay and back pay, sustained by Ms. Mountjoy as a result of her involuntary demotion and explained how he calculated the dollar amount of such loss. Dr. Hutchinson testified that Ms. Mountjoy's total present value economic loss in consequence of her demotion based on her work life expectancy amounts to $62,922.00, consisting of back pay loss of $13,853.00 and front pay loss of $49,069.00. The testimony of Dr. Hutchinson is material evidence which is more than sufficient to support the jury's damage award of $61,179.00.

We next direct our attention to the fourth factor - the availability of comparable employment opportunities and the time reasonably required to find another job. As noted above, the City has failed to provide meaningful evidence of present comparable job opportunities. Moreover we do not find evidence which would require the jury to conclude that Ms. Mountjoy would be presented with comparable job opportunities during the remaining 12.3 years allotted to her work life as attested by Dr. Hutchinson. We also note Ms. Mountjoy's previously referenced testimony wherein she stated that she was either under qualified or over qualified for all of some 500 jobs which were posted by the City over a period of more than two and one-half years and that she was limited as a result of her skilled level position. Accordingly, we are compelled to find that there was material evidence before the jury which would have supported the conclusion that Ms. Mountjoy would not find comparable employment in the future and that a front pay damage award was reasonably calculated on the basis of her work life expectancy.

Our review of the record persuades us that the jury's award of damages on this case was supported by material evidence and such award was neither excessive nor speculative.

The final issue we address is whether the Trial Court abused its discretion by awarding Ms. Mountjoy attorney fees in the amount of $18,612.00 and discretionary costs in the amount of $2,957.65.

That portion of the Tennessee Human Rights Act set forth at T.C.A. 4-21-306(a)(7) provides that reasonable attorney fees are included among the remedies available to an aggrieved plaintiff under the Act. It is well settled that a trial court is vouchsafed wide discretion as to the allowance of attorney fees and an appellant contesting a trial court's award of attorney fees has the burden of showing that the evidence preponderates against the trial court's decision in that regard. *Threadgill v. Threadgill*, 740 S.W.2d 419 (Tenn. Ct. App. 1987). Other costs, including reasonable and necessary court reporter expenses for depositions or trials and necessary expert witness fees, are also allowable to the prevailing party in a lawsuit in the court's discretion pursuant to T.R.C.P. 54.04. As with attorney fees, upon appeal of a trial court's award of discretionary costs, the appellant bears the burden of showing that the trial court abused its discretion in awarding such costs. *Sanders v. Gray*, 989 S.W.2d 343 (Tenn. Ct. App. 1998).

The City argues 1) that Ms. Mountjoy did not prevail on her claim of sexual harassment and that she should not be allowed either attorney fees or discretionary costs attributable to that portion of her case; 2) that the rates of $150.00 to $200.00 per hour which the City alleges were requested by Ms. Mountjoy's attorneys are excessive by community standards and 3) that neither the attorney fees nor the requested costs were adequately documented.

In its opinion and order of June 5, 2001, the Trial Court states:

> This cause is further before the Court on the plaintiff's Motion to Assess Attorney Fees and Costs. After argument in open court, review of the time statement and affidavits submitted by plaintiff's counsel, the Court finds plaintiff should recover, and does therefore
>
> **ORDER** the City of Chattanooga to pay the plaintiff the sum of $18,612.00 as her reasonable attorney fees and the sum of $2,957.65 as discretionary costs.

The Court does not specifically state its rationale for its decision in awarding the stated attorney fees and discretionary costs or describe how it arrived at the amounts awarded. Furthermore, as noted by the City in its brief, neither the attorney fees nor discretionary costs requested by Ms. Mountjoy are documented in the record. Nor does the record contain the statement of time and affidavits submitted by Ms. Mountjoy's attorneys which are referred to by the Trial Court in its order and opinion. Because of the disparity of specific information which we have been provided as to the basis for both the amounts requested in the motion to assess attorney's fees and the amounts awarded by the Trial Court we find that the City has failed to meet its burden of showing that the evidence preponderates against the Trial Court's decision. With respect to the City's specific arguments we cannot say what, if any, portion of the Trial Court's award was for fees and costs incurred in pursuit of Ms. Mountjoy's sexual harassment claim. Nor can we determine whether the Trial Court calculated the award of attorney fees on the basis of an hourly rate and, if so, what that rate was and if it was excessive. And, finally, we cannot from the evidence provided make a determination as to whether the attorney fees or costs were adequately documented. Accordingly, we find the City's argument that the Trial Court abused its discretion in its award of attorney fees and discretionary costs to be without merit.

For the foregoing reasons the judgment of the Trial Court is affirmed and the case is remanded for collection of costs below which are, as are costs of appeal, adjudged against the City of Chattanooga.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE

-8-